Dissent by Judge Kleinfeld OPINION KRONSTADT, District Judge: K. Layne Morrill (“Morrill”), an attorney who resides in Arizona, and the law firm where he practices, Morrill & Aron-son, P.L.C. (“Morrill & Aronson”), which is also located in Arizona (collectively “Plaintiffs”), brought claims in the District of Arizona for abuse of process and wrongful institution of civil proceedings. The complaint named five defendants. The District Court dismissed the action, concluding that there was no personal jurisdiction over any defendant. Plaintiffs appealed. We affirm. I. BACKGROUND In December 2008, Plaintiffs began representing Gary Tharaldson (a Nevada resident), Club Vista Financial Services, L.L.C. (a Nevada corporation whose principal place of business is in Nevada), and Tharaldson Motels, II, Inc. (a North Dakota corporation whose principal place of business is in Nevada) (collectively “Thar-aldsons”) in connection with a failed condominium construction project in Las Vegas, Nevada. In January 2009, the Tharaldsons filed a civil action in the Eighth District Court of Clark County, Nevada (“Tharald-son Litigation”), in which Plaintiffs were counsel. Through that action, the Tharald-sons sought to be relieved of obligations associated with their previous guaranty of a $100 million construction loan made in connection with the condominium project. Plaintiffs continued to represent the Thar-aldsons in that' litigation until June 2011. The defendants in the Tharaldson Litigation were Scott Financial Corporation (“Scott Financial”) (a North Dakota Corporation with its principal place of business in. Nevada) and its sole shareholder and officer, Bradley J. Scott (a North Dakota resident) (collectively “Scott Parties”). J. Randall Jones (“Jones”), who is a resident of Nevada, represented the Scott Parties in the Tharaldson Litigation. During that representation, Jones practiced with Kemp, Jones & Coulthard, L.L.P., which is a law firm based in Nevada, and Harrison, Kemp & Jones, Chartered, which is a Nevada law firm and professional corporation. The Scott Parties, Jones and the two law firms are the defendants in this action (“Defendants”). Plaintiffs claim that, during the Tharald-son Litigation, Defendants “engaged in a campaign to harm [Plaintiffs]” in retaliation for their role as counsel to the Thar-aldsons. The first step in this alleged campaign occurred in October 2010, which was five months before the scheduled trial date. At that time, the Scott Parties sought to depose Morrill and his partner, Martin Aronson. As part of that process, the Scott Parties commenced companion civil proceedings in an Arizona Superior Court seeking to obtain a separate deposition subpoena for each witness. At that time, these civil proceedings were required by Arizona Rule of Civil Procedure 30(h) when an out-of-state party sought to depose a person who resided in Arizona. Ariz. R. Civ. P. 30(h) (2010) (deleted August 30, 2012, effective January 1, 2013).[1] Jones represented the Scott Parties in those proceedings. An Arizona Superior Court issued the requested subpoenas, and Morrill and Ar-onson were served. Morrill and Aronson then brought a motion to quash the subpoenas in the Arizona Superior Court. They argued that the “true purpose in taking the depositions ... was to pry into what [Plaintiffs] had learned about the [Tharaldson] case and to obtain privileged information and to attempt to drive a wedge between [Plaintiffs] and their clients” in that litigation. Jones was admitted pro hac vice in Arizona so that he could participate in the proceedings with respect to the motion to quash. The Scott Parties filed an opposition to the motion, and Jones appeared at the hearing on the motion that was held in the Arizona Superior Court. At the conclusion of the hearing, the Superior Court judge granted the motion. However, that' order was without prejudice to having the issue reviewed and decided de novo by the Special Discovery Master in Nevada who was overseeing discovery disputes in the Tharaldson Litigation. As the Superior Court judge explained, “I want the minute entry to reflect that this Court does not intend in any way to suggest to Floyd A. Hale, Special Master, what he ought to rule with regard to the matters which will finally be briefed [for] him on December 3rd, 2010.” The Scott Parties then provided Special Master Hale with Plaintiffs’ motion to quash and their response that had been filed in the Arizona Superior Court. Special Master Hale denied the motion to quash and ruled that the depositions of Morrill and Aronson could proceed. Plaintiffs appealed that order through the Nevada courts, including to the Nevada Supreme Court. The Nevada Supreme Court held that the depositions could proceed if the Scott Parties successfully demonstrated that “(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.” Thereafter, the Scott Parties elected not to proceed further, and the depositions were not taken. In April 2011, the Scott Parties brought a defamation action against Plaintiffs in a Nevada court. It was based on alleged statements made by Plaintiffs to a Nevada mortgage lender during the course of discovery in the Tharaldson Litigation. The Scott Parties effected service of the complaint on Plaintiffs'in Arizona. Plaintiffs argued that the action was without merit in light of the broad litigation privilege that applies under Nevada law to statements made during a pending judicial proceeding. After the Scott Parties declined to dismiss the action voluntarily, Plaintiffs moved for summary judgment. Their mor tion was granted. The Nevada Supreme Court affirmed that ruling. In May 2011, Jones filed a grievance with the Nevada State Bar “alleging that Morrill acted unethically and unprofessionally.” The Screening Panel of the Nevada State Bar decided not to initiate disciplinary proceedings against Morrill, and dismissed the complaint without prejudice. In June 2011, the Tharaldsons elected to retain new counsel to represent them in the Tharaldson Litigation. Plaintiffs contend that the aforementioned conduct of Defendants “was a factor that contributed to the ... decision to retain new trial counsel.” Based on the foregoing alleged conduct, Plaintiffs brought the present action in the District of Arizona. As noted, it advances claims against Defendants for abuse of process and wrongful institution of civil proceedings. As also noted, Defendants moved to dismiss the complaint for lack of personal jurisdiction. The District Court granted the motion, concluding that there was no personal jurisdiction over any of the Defendants. II. STANDARD OF REVIEW We review dismissals for lack of personal jurisdiction de novo. Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 671 (9th Cir. 2012). When a defendant moves to dismiss for lack of personal jurisdiction, “the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.” Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Because no evidentiary hearing occurred in this action, “the plaintiff need only make a prima facie showing of jurisdictional facts.” Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). All uncontroverted allegations in the complaint are deemed true, and factual disputes are to be resolved in favor of the non-moving party. Id. III. ANALYSIS A. Standards for Establishing Personal Jurisdiction “Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons:” Daimler AG v. Bauman, — U.S. —, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014). Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution. See Ariz. R. Civ. P. 4.2(a). Therefore, the determination whether the District Court had personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment. Constitutional due process requires that defendants “have certain minimum contacts” with a forum state “such that the maintenance of the suit does not offend ‘traditional notions of fair .play and substantial justice.’ ” Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Minimum contacts are shown, if the defendant has “continuous and systematic general business, contacts” with a,forum state (general jurisdiction), or if the defendant has sufficient contacts arising, from or related to specific transactions or activities in the forum state (specific jurisdiction). Schwarzenegger, 374 F.3d at 800-02. Plaintiffs do not contend that Defendants are subject to general jurisdiction in Arizona. Instead, they argue that Defendants are subject to specific jurisdiction there. We apply a three-part test to determine whether a defendant has sufficient contacts to be subject to specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege pf conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which .arises out of or relates to the defendant’s forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. Id. at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). “The plaintiff bears .the burden of satisfying the first two prongs of the test. If the plaintiff fails to. satisfy either of these prongs, personal jurisdiction is not established in the forum state.” Id. (citation omitted). “If the plaintiff succeeds in satisfying both of the first two prongs, the-burden then shifts to the defendant to-‘present a compelling' case’ that the exercise of jurisdiction would not be reasonable.” Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78, 106 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). B. Defendants’ Actions Were Not Purposefully Directed at Arizona Under the first prong of the test for specific personal jurisdiction, Plaintiffs must show that, Defendants purposefully directed their activities toward Arizona, or purposefully availed themselves of the privilege of conducting activities there. We generally apply the purposeful availment test when the underlying claims arise from a contract, .and the purposeful direction test when they arise from alleged tortious conduct. Id. at 802. The latter test applies here given, the nature of. the underlying claims. Purposeful direction “requires that the defendant ... have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.” Id. at 803 (quoting Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir, 2002)). Actions may be directed at the forum state even if they occurred elsewhere, Id. However, “random, fortuitous, or attenuated contact's” are insufficient to create the requisite connection with the forum. Burger King, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotation marks omitted). An intentional act is one “denoting] an external manifestation of the actor’s will ... not inelud[ing] any of its results, even the most direct, immediate, and intended.” Wash. Shoe, 704 F.3d at 673-74 (quoting Schwarzenegger, 374 F.3d at 806). Plaintiffs claim that Defendants engaged in conduct that was sufficient to show that they “Committed an intentional • act” expressly aimed at. the forum state of Arizona. That conduct included the following: • Making phone calls, sending letters, mailing pleadings and discovery documents, and sending emails to Plaintiffs in Arizona. • Filing civil actions in Arizona in order to have deposition subpoenas issued for Morrill and Aronson, and serving those subpoenas and notices of deposition on them in Arizona. • Filing an opposition to Plaintiffs’ motion to quash the subpoenas that was brought in the Arizona Superior Court, and appearing pro hac vice in those proceedings, including at the hearing on the motion. • Seeking a .ruling by Special Master Hale on the motion to quash by submitting to him copies of the. briefs that had been filed in the Arizona Superior Court, and after the decision by Special Master Hale that denied the motion, opposing Plaintiffs’ appeals in the Nevada courts. • Filing the defamation action brought by the Scott Parties against Plaintiffs in Nevada, serving the complaint in that action on Plaintiffs in Arizona, and pursuing the claims for defamation until Plaintiffs prevailed on them motion for summary judgment. Thereafter, appealing that order to the Nevada Supreme Court. As the Supreme Court stated in Walden v. Fiore, — U.S. —, 134 S.Ct. 1115, 1126, 188 L.Ed.2d 12 (2014), the “mere fact that [a defendant’s] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.” Instead, two factors are considered in determining whether an action is expressly aimed at the forum state: (1) First, .the relationship must arise out of contacts that the defendant himself creates with the forum State. ... Put simply, however significant the plaintiffs contacts with the forum' may be, those contacts cannot be decisive in determining whether the defendant’s due process rights are violated. (2) Second, our. “minimum contacts” analysis looks to the defendant’s contacts with the forum State itself, not the defendant’s contacts with persons who reside there. Id. at 1122 (citations omitted). In Walden, an agent of the federal Drug Enforcement Administration seized $97,000 in cash ■ from two professional gamblers at an airport in Atlanta, Georgia. The gamblers were citizens of Nevada. Thereafter, the agent assisted in drafting an allegedly fraudulent affidavit in support of the claim of probable cause for the seizure. Id. at 1120. The gamblers brought a Bivens action[2] against the agent in the District of Nevada, seekihg damages for alleged violations of their Fourth Amendment rights. Id. The District Court dismissed the action -after concluding that there Was no personal jurisdiction over the agent in Nevada. We reversed. That decision concluded that the agent “had ‘expressly aimed’ his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a ‘significant connection’ to Nevada.” Id. (citations omitted). The Supreme Court reversed in a unanimous decision. The Court concluded that the agent had not expressly targeted the state of Nevada. He had “never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada,” and for thesé' reasons had “formed no jurisdictionally relevant contacts with Nevada.” Id. at 1124. The Court added that the alleged harm was not sufficiently linked to Nevada. The gamblers “would have experienced this same lack of access [to the confiscated funds] in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had.” Id. at 1125. Walden distinguished Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), in which the Court affirmed a finding of personal jurisdiction in California over two Florida residents. Those defendants had written -and edited an allegedly libelous article about a California resident that was published in the National Enquirer. Id. at 783, 104 S,Ct. 1482. Although that publication was circulated throughout the country, the Court found that the actions of the authors “were expressly aimed at California.” Id. at 789, 104 S.Ct. 1482. As Walden explained: The crux of Calder was that the reputation-based “effects” of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. Accordingly, the reputational injury caused by the defendants’ story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. 134 S.Ct. at 1123-24 (citations omitted). Plaintiffs rely on this language to support their contention that the “crux” of their claims “is the reputational injury [Defendants] intentionally caused [Plaintiffs] to suffer at them Arizona Domicile.” They argue that, “[l]ike [the] defamation in Calder, abuse of process and [wrongful institution of civil proceedings] were not complete until [Plaintiffs] suffered in Arizona the harm from the [Defendants’] wrongful conduct.” Plaintiffs’ argument is unpersuasive. In Calder the defendants published the allegedly defamatory statements in the forum state, and the claimed harm to-the plaintiff occurred when the residents of that state read them. It was the publication itself that caused the alleged injury in the forum state. Consistent with the standard of Walden, this “relationship ... ar[o]se out of contacts that the defendant himself create[d] with the forum State.” 134 S.Ct. at 1122. Here, by contrast, Plaintiffs elected to work outside of Arizona in order to participate as counsel in the Tharaldson Litigation that was conducted in Nevada. The allegedly tortious conduct here involved very limited communications and proceedings in Arizona, all of which arose out of and were component parts of the litigation in Nevada. Any links to Arizona, which included Defendants’ communications with Plaintiffs by telephone and email about the Tharaldson Litigation, occurred only because it happened to be where Plaintiffs resided. The primary effects of Defendants’ actions, including the alleged harm, were tied directly to the litigation in Nevada. This is confirmed by the order issued by the Arizona Superior Court that quashed the subpoenas issued in connection with the Tharaldson Litigation. It was without prejudice to a de novo review by the Special Master in Nevada who had been appointed in the Tharaldson Litigation. He later denied the motions, a ruling that was ultimately affirmed, with limitations, by the Nevada'Supreme Court. Thus, even the deposition subpoena process, which is'a significant basis for Plaintiffs’ claim of jurisdiction in Arizona, was definitively adjudicated in Nevada. Because Defendants knew that Plaintiffs were from Arizona, it was foreseeable that some injury to them could have been experienced there based on the actions taken by Defendants in connection with the Tharaldson Litigation. Harm suffered in the forum state is a necessary element in establishing purposeful direction. See Schwarzenegger, 374 F.3d at 802. However, the potential foreseeability of some incidental harm to Plaintiffs in Arizona due to substantial litigation that was pending in Nevada, without more, does not show that Defendants expressly targeted the forum state. “Such reasoning improperly attributes a plaintiffs.forum connections to the defendant and makes those connections ‘decisive’ in the jurisdictional analysis. It also obscures the reality that none of [the] challenged conduct had anything to do with [the forum state] itself.” Walden, 134 S.Ct. at 1125. Colder adopted the rule that to establish the basis for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there. This case has more in common with Walden than Colder, In Walden, the sole connection to the forum state of Nevada was that plaintiffs resided there. The relevant actions—the seizure of the money and the preparation of the affidavit—occurred in Georgia, and were related to the plaintiffs’ brief presence there. Here, Plaintiffs’ Complaint alleges that Defendants’ tor-tious activities were undertaken for “ulterior purposes,” including the following: (a) to invade the attorney-client privilege between Plaintiffs and the Tharaldson Entities (as well as attorney work product) for tactical advantage in the Tharaldson Proceeding; (b) to interfere with Plaintiffs’ trial preparation in the Tharaldson Proceeding; (c) to punish Plaintiffs for discovering and marshalling [evidence contrary to Defendants’ position in the Thar-aldson Proceeding]; ... and (d) to manufacture the appearance of a conflict of interest with respect to Plaintiffs as counsel in the Tharald-son Proceeding that might lead the Tharaldson Entities either to settle or to switch trial counsel shortly before the trial ..:. According to Plaintiffs, all of these alleged actions had a common and improper purpose—to gain ah advantage for Defendants and their clients in the Tharaldson Litigation that was proceeding in Nevada. From this they contend that these actions did not constitute legitimate litigation conduct. To be sure, the purpose of a party’s action is not the lodestar for o,ur jurisdictional determination; rather, we consider the nature of the action itself and the resulting harm. Under the facts of the instant case, however, the driving force behind Defendants’ actions—the ongoing litigation in Nevada—also provides the framework within which the actions occurred and the foreseeable harm would result. In other words, the allegedly tor-tious acts were not simply motivated by, or designed to achieve a benefit in, the Nevada litigation, they were component parts of that litigation. Indeed, the manner in which the Defendants allegedly conducted the litigation in Nevada, i&, the Thar-aldson Litigation, the defamation action and the Nevada State Bar proceeding, is the basis for Plaintiffs’ claims. For example, Defendants pursued the depositions at ■ issue as part of the discovery process in the Tharaldson Litigation. The litigation challenging the right to take the depositions took place under its auspices, as confirmed by the deference of the Arizona Superior Court to the Nevada Special Master when issuing its ruling on Plaintiffs’ motion to quash. The involvement of Arizona procedures was solely a by-product of Plaintiffs’ residence. Further, as noted, the propriety of the subpoenas was ultimately decided by the Nevada Supreme Court. The facts of this case may not be as clear-cut as those in Walden: The Walden defendant had “never traveled to ... or sent anything or anyone to” the forum state. Walden, 134 S.Ct. at 1124. Here, Defendants did both. However, they did so in the course of complying with procedural requirements for advancing litigation being prosecuted entirely in another state, not as a separate action in which substantive claims were presented. Therefore, as in Walden, the forum state was only implicated by the happenstance' of Plaintiffs’ residence; if other states had procedural rules similar to. those that were in place in Arizona at the time that the Tharaldson Litigation was pending -and Plaintiffs resided in one of them, they would - have “experienced this same [alleged tortious conduct] in California, or Mississippi, or wherever else they might have- [resided].” Id. at 1125. Service of counsel at the address of that person’s office is contemplated by Nevada law. Nev. R. Civ. P. 5(b)(2) (allowing service on an attorney by in-person service, delivery to the attorney’s office, mailing to the attorney’s last known address, or by electronic delivery where pri- or consent has been provided). Because these actions were undertaken as part of the Tharaldson Litigation, which was pending in Nevada, they did not constitute independent wrongdoing. “For a State to exercise jurisdiction consistent with due process, the defendant’s suit-related conduct must create a substantial connection with the forum State.” Walden, 134 S.Ct. at 1121. Nor do the actions taken by the Defendants in Arizona in an effort to depose Morrill and Aronson as part of-the Thar-aldson Litigation provide a sufficient basis to show that the alleged torts were “expressly aimed” at Arizona. As the District Court correctly concluded, the Scott Parties commenced the companion civil proceedings in Arizona because they were required to do so in order to subpoena Plaintiffs for depositions in the Nevada litigation. At that time, Arizona had adopted the commonplace procedural requirement that a party seeking to depose an Arizona resident in connection with a civil action pending in another state had to initiate a civil action in Arizona. Ariz. R. Civ. P. 30(h) (deleted August 30, 2012, effective January 1, 2013). Such a process permitted an Arizona witness the' benefit of a more convenient forum in which to raise any challenge to the subpoena.[3] Jones appeared in the Arizona Superior Court as part of that process. “Physical entry into the State— either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a, relevant contact.” Walden, 134 S.Ct. at 1122 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774-75, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). However, physical entry that is merely incidental to an out-of-state transaction does not satisfy the constitutional minimum contacts requirement. See Picot v. Weston, 780 F.3d 1206, 1213 (9th Cir. 2015) (defendant’s two trips td California did not establish personal jurisdiction because the trips were short, defendant’s role in California was “relatively small,” and both trips “grew incidentally” out of the broader non-California relationship).[4] Nor did the service of the defamation complaint on Plaintiffs in Arizona reflect an action directed toward Arizona. The defamation action was filed in Nevada. The claimed defamatory statements were made by Plaintiffs in Nevada, to a Nevada resident and in the course of discovery in the Tharaldson Litigation. Service of process on Plaintiffs where they resided was consistent with the requirements of Nevada law. Nev. R. Civ. P. 4(d)(6) (upon filing of a complaint, process is to be served “to the defendant personally, or by leaving' copies thereof at the defendant’s dwelling house or usual place of abode ... or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process”). It was not otherwise linked to Arizona. Cf. Wallace v. Herron, 778 F.2d 391, 394 (7th Cir. 1985) (in malicious prosecution action, no personal jurisdiction in Indiana over defendants who were California attorneys who had “served interrogatories [in Indiana], requested the production of documents, and caused the plaintiff to respond to five complaints,” because “defendants filed these motions on behalf of their clients in a California court, pursuant to a California lawsuit, and it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts”). The dissent disagrees with this overall analysis. It suggests that considering the challenged actions as ones undertaken to advance the interests of Defendants’ clients in the Tharaldson Litigation creates a new rule that does not comport with the controlling standards. The dissent describes the new rule as one under which a defendant’s purpose for an alleged tortious act has greater jurisdictional significance than where the challenged act occurred. The hypothetical that is offered in support of this position involves conduct by a defendant that has a physical effect in the state where jurisdiction is disputed, e.g., throwing a rock through a window of the plaintiffs residence in the forum state. No such rule is adopted here. As previously explained, Defendants’ subjective motivations are not material to the analysis—it ■ simply happens that, under the facts before us, the reason for Defendants’ action (litigation in Nevada) also provides the relevant context within which we must assess the nature and consequences of Defendants’ alleged acts. As in Walden, when a defendant’s relationship to the forum state arises from the fortuity of where the plaintiff resides and the corresponding procedural requirements for the issuance of a deposition subpoena, it does not provide the basis for specific jurisdiction there. Our analysis does not conflict with the well-established rule—to which the dissent alludes—that, when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there. Brainerd v. Governors of the University of Alberta, 873 F.2d 1257, 1258-60 (9th Cir. 1989) (personal jurisdiction in Arizona established by communications sent by out-of-state defendant to recipients in Arizona that allegedly interfered with plaintiffs contractual and other rights). Defendants’ conduct in Arizona occurred as part of the required process for pursuing discovery and serving Plaintiffs in connection with the litigation in Nevada. The outcome would be different if, as suggested by the hypothetical presented by the dissent, an attorney had traveled to Arizona, not to appear at a hearing on a motion to quash a subpoena, but to throw a rock through the window of the Arizona residence of opposing counsel in litigation that was pending in Nevada. The reason for such inappropriate conduct could have been the animosity between counsel that resulted from their interaction during the litigation in Nevada. However, the throwing of the rock would not have been required, or in any manner justified, by the litigation process there.[5] To establish personal jurisdiction over Defendants in this action, Plaintiffs were required to make a prima facie showing that Defendants’ alleged actions were directed at Arizona, not just at individuals who resided there. Plaintiffs failed to do so. The alleged tortious conduct was a component part of the litigation in Nevada. Contacts with Arizona, including the appearance at the hearing on the motion to quash, were quite limited and ancillary to the litigation in Nevada. These conclusions are consistent with our recent statement of the principles governing specific jurisdiction. Williams v. Yamaha Motor Co., 851 F.3d 1015, 1022-24 (9th Cir. 2017). C. Defendants Did Not “Purposefully Avail” Themselves of the Benefits of Arizona Law As noted, a different test for personal jurisdiction is applied in cases that arise from disputes about contracts. Plaintiffs argue that this test also applies to the present action. Under this test, we ask whether a defendant “purposefully availed” itself of the laws of the forum state. The Supreme Court has defined purposeful availment as where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum’s laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. Burger King Corp., 471 U.S. at 475-76, 105 S.Ct. 2174 (citations omitted). Plaintiffs argue that the Defendants “expressly invoked the ‘benefits and protections’ of the laws of Arizona” in taking all of the actions described above with respect to the deposition subpoenas. These actions included the commencement of the civil actions as to the deposition subpoenas, service of the deposition notices, opposing the motion to quash and appearing at the hearing before the Arizona Superior Court. Plaintiffs’ arguments fail for two reasons. First, the claims at issue are premised on alleged tortious conduct by Defendants. Therefore, the purposeful availment test does not apply. See Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995) (“[W]e apply different purposeful availment tests to contract and tort cases. ... [Mjerely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident. In tort eases, however, jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state.” (citations omitted)). Second, even if the test applied, Plaintiffs’ allegations as to the relevant conduct are insufficient to show purposeful availment. For the reasons stated earlier with respect to the application of the purposeful direction test, Defendants’ contacts with Plaintiffs arose from the Tharaldson Litigation in which the principal parties here were opposing counsel. These contacts were related not to Plaintiffs’ status as residents of Arizona, but to their role as counsel in the Tharaldson Litigation, which was pending in Nevada. Therefore, Defendants’ actions did not create a “substantial connection” with Arizona, or give rise to any “ongoing obligations” there. Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008). IV. CONCLUSION For the foregoing reasons, the judgment dismissing this action for lack of personal jurisdiction is AFFIRMED. . The-relevant portion of Rule 30(h) provided: "When an action is pending in a jurisdiction foreign to the State of Arizona and a party or a party’s attorney wishes to take a deposition in this state, it may be done and a subpoena or subpoena duces tecum may issue therefor from the Superior Court of this state. The party or attorney shall file, as a civil action, an application, under oath, captioned as is the foreign action[.]” . Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). . This rule was similar to the version of Fed, R. Civ. P. 45 that was in place prior to its amendment in 1991. Until that time, Rule 45 required that a party to litigation in one judicial district, who sought to take a deposition of a person who resided in another district, seek the issuance of a subpoena from "the district court for the district in which the deposition is to be taken!” Fed. R. Civ. P, 45(d) (1991). After the 1991 Amendment, a party seeldng to subpoena an out-of-district deponent no longer had to apply directly to the clerk of the district where the deposition would proceed. However, the subpoena had .to "issue ... from the district in which the deposition [was] to be taken.” Fed. R. Civ. P. 45(a)(2) (1992) and Comment. This requirement remained in place until Rule 45 was amended in 2013. The Rule now requires the issuance of the subpoena from the district in which the case is pending. Fed, R. Civ. P. 45(a)(2). However, it also provides that disputes as to the scope or validity of the subpoena are to be addressed by the court in the district where the deponent resides unless there are exceptional circumstances that warrant the transfer of those disputes to the court that issued the subpoena, or if the person whose deposition is sought agrees to such a transfer. Fed. R. Civ. P. 45(f). . The dissent suggests thdt this analysis differs from that adopted by the Sixth Circuit in MAG IAS Holdings, Inc. v. Schmückle, 854 F.3d 894, 896 (6th Cir. 2017). We disagree. The factual bases for claimed jurisdiction in the two cases are quite different. In MAG IAS Holdings, Inc., the plaintiff was a Michigan corporation that brought claims there against a defendant who was the former CEO of plaintiffs parent company, the "MAG Group.” Id. at 897. The defendant, a German citizen residing in Germany, contested jurisdiction. Id. The claims included breach of fiduciary duty, professional negligence and waste of corporate assets based on an alleged scheme by defendant and others to "engineer a ‘fire sale’ of MAG Group assets for [defendant’s] own personal benefit.” Id. Applying Walden, the Sixth Circuit concluded that there was personal jurisdiction over the defendant. Id. at 901. This determination was based on the defendant’s substantial, alleged contacts with Michigan: [Defendant] purposefully availed himself of the benefits of doing business in Michigan by: (1) being CEO of the MAG Group and holding himself out as having "global authority” over MAG operations, including those in Michigan; (2) directing and controlling MAG operations in Michigan; (3) traveling to Michigan on two occasions to meet with executives and customers; (4) initiating calls and emails to the state each week to. direct MAG business; (5) transferring business from Michigan to Germany to prop up the German operations at the expense of those in Michigan; (6) engaging Michigan-based executives in strategic financing and sales negotiations; and (7) arranging for the Michigan operations to pay part of his salary by instituting a €1.5 million transfer payment from MAG Automotive to MAG Germany. Id. Because the contacts with Arizona by the Defendants in this action are not of a similar nature, there is no conflict with MAG IAS Holdings, Inc. . A consideration of a modified version of the hypothetical presented by the dissent confirms-this analysis. Suppose that an attorney from Arizona was representing a client in a contentiously litigated matter that was pending in Nevada. Opposing counsel, who was a citizen of Nevada, threw a rock through the window of the hotel room in Nevada in which the Arizona attorney was staying during the litigation. The Arizona attorney then brought a tort action in Nevada in which opposing counsel was named as the defendant. In the course of the litigation, the defendant wished to depose certain partners of the plaintiff who had witnessed the alleged tort. As a result, the defendant initiated proceedings in Arizona— like the ones here—to obtain deposition sub: poenas for these non-parties. The proposed deponents then moved to quash the subpoenas in a proceeding in the Arizona Superior Court, The defendant, who was representing himself, appeared pro hac vice in Arizona to oppose the motions. The motions were granted, At that point, the plaintiff elected to re-file the tort action in Arizona, claiming that, by causing the issuance of the subpoenas and participating in the proceedings on tire motions to quash, defendant had engaged in conduct related to the alleged tort that subjected him to specific jurisdiction in Arizona. This claim of specific jurisdiction would fail for the same reaso'ns stated above. The ancillary proceedings in Arizona would not constitute a sufficient basis for jurisdiction over the defendant with respect to the underlying event that occurred in Nevada.