**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FREESTREAM AIRCRAFT (BERMUDA) LIMITED; ALIREZA ITTIHADIEH,
*Plaintiffs-Appellants*,

v.

AERO LAW GROUP; JOHN SCHMIDT,
*Defendants-Appellees.*

No. 16-17347

D.C. No.
2:16-cv-01236-
JCM-NJK

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, Senior District Judge, Presiding

Argued and Submitted April 12, 2018
San Francisco, California

Filed September 18, 2018

Before: Kim McLane Wardlaw and Jacqueline H. Nguyen,
Circuit Judges, and Solomon Oliver, Jr., * District Judge.

Opinion by Judge Nguyen

---

* The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Personal Jurisdiction

The panel reversed the district court's dismissal for lack of personal jurisdiction of a complaint in which plaintiffs alleged that John Schmidt made defamatory statements about Freestream Aircraft (Bermuda) Limited at an aviation industry conference in Nevada.

Freestream is a Bermudan full-service aircraft company that was founded by Alireza Ittihadieh, a citizen of the United Kingdom who currently resides in Switzerland. John Schmidt, a Washington resident, is an attorney at Aero Law Group, a Washington professional corporation that provides transactional legal services to airlines and aircraft owners and operators worldwide, and regularly solicits business in Nevada, including participating in industry meetings and conventions in the state. Plaintiffs Freestream and Ittihadieh sued defendants Schmidt and Aero in the United States District Court for the District of Nevada.

The panel held that Nevada's exercise of personal jurisdiction over defendants comported with constitutional due process because all three prongs of the minimum contacts test for specific jurisdiction were satisfied.

The panel held that the district court erred in relying on the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), because the inquiry under that test focused on conduct that took place outside the forum state and that had effects inside

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the forum state. The panel further held that the rule in *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1984*)*, not *Calder*, was the proper starting place where, as here, an intentional tort was committed within the forum state.

The panel held that because plaintiffs alleged that defendants committed the intentional tort of defamation while present in the forum state, the first two prongs of the minimum contacts were satisfied.

The third prong of the minimum contacts test for specific jurisdiction provides that the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. Under *Paccar*, to evaluate reasonableness, the court uses a seven-factor balancing test. The panel held that the balancing test weighed in plaintiffs' favor, or, at best was a wash. The panel concluded that defendants failed to make a compelling case that the district court's exercise of personal jurisdiction over them would be unreasonable, particularly in light of Nevada's strong interest in adjudicating matters involving intentional torts committed within the State.

## COUNSEL

Marc Ayala (argued), Boies Schiller Flexner LLP, Armonk, New York; Douglas A. Mitchell, Boies Schiller Flexner LLP, Las Vegas, Nevada; for Plaintiffs-Appellants.

Angela T. Nakamura Ochoa (argued) and Joseph P. Garin, Lipson Neilson Cole Seltzer & Garin P.C., Las Vegas, Nevada, for Defendants-Appellees.

## OPINION

NGUYEN, Circuit Judge:

A defendant who travels to Nevada and commits an intentional tort there can be sued in that state, absent circumstances that would make such a suit unreasonable. The outcome appears obvious, but we have admittedly created some confusion as to the proper analytical approach to specific jurisdiction in our circuit. Today we take the opportunity to clarify our case law.

Plaintiffs Freestream Aircraft (Bermuda) Limited ("Freestream") and Alireza Ittihadieh sued Defendants John Schmidt and Aero Law Group ("Aero") in the United States District Court for the District of Nevada, alleging that Schmidt made defamatory statements about Freestream at an aviation industry conference in Nevada. The district court granted Defendants' motion to dismiss for lack of personal jurisdiction.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## FACTUAL BACKGROUND

Freestream is a Bermudan full-service aircraft company in the business jet market. It participates in all aspects of aircraft transactions: brokerage, acquisition, marketing, sales, custom design services, import/export, and maintenance review. Freestream was founded in 1992 by Plaintiff Alireza Ittihadieh, a citizen of the United Kingdom who currently resides in Switzerland.

John Schmidt, a Washington resident, is an attorney at Aero. Aero is a Washington professional corporation that

provides transactional legal services to airlines and aircraft owners and operators worldwide. Aero allegedly regularly solicits business in Nevada, including by participating in industry meetings and conventions in the state.

Aero belongs to several trade groups, including the National Business Aviation Association ("NBAA"), and attends trade seminars and conferences around the world. The NBAA holds its annual conferences in various locations, and, in 2015, held a conference in Las Vegas, Nevada.

Freestream alleges that Schmidt has been attacking its reputation by falsely stating that a transaction structure used by Freestream—a "back-to-back" transaction[1]—is illegal and unethical and that Freestream only uses this type of transaction.

In 2014, Schmidt allegedly interfered with Freestream's imminent sale of a Boeing Business Jet to a company named Blue City Holdings LLC by telling its representatives that Freestream was built entirely on illegal and unethical back-to-back transactions and urging them to discontinue all business with Freestream and Ittihadieh. After the transaction fell through, Freestream's counsel wrote to Aero demanding that Schmidt and his colleagues stop defaming Freestream. Aero's founder responded that, to his

---

[1] In a back-to-back transaction, the broker acts as both an interim buyer and interim seller of an aircraft. In other words, the broker, who is aware of a potential seller and buyer, buys the aircraft from the seller and then sells it to the buyer. The broker's compensation is the difference between the purchase price from the original seller and the sale price to the end buyer. This is in contrast to a direct-sale transaction, in which a broker connects a buyer and seller and then takes a commission on the direct sale between the two.

knowledge, nobody at Aero had ever stated or implied that Freestream's business was built entirely on back-to-back transactions.

On June 25, 2015, at an aviation conference on the Isle of Man, Schmidt met with Masha Shvetsova, whom Schmidt understood to be an agent for potential buyers of a Boeing Business Jet. When Shvetsova told Schmidt that she was leaning towards using Freestream as a broker, Schmidt told her that she was "going to be led" to a back-to-back transaction. Shvetsova asked about the legality of back-to-back transactions. Schmidt responded, "It's quite possibly illegal," adding that back-to-back transactions were "ripe" for criminal prosecution, "but it has not happened yet." When Shvetsova asked why brokers use the back-to-back transaction if it is illegal or arguably illegal, Schmidt said, "[I]t's extremely lucrative."

Several months later, on November 18, 2015, Schmidt again met with Shvetsova at the NBAA Annual Meeting and Convention in Las Vegas, Nevada. This time, they were joined by Marwan Khalek, CEO of Gama Aviation, a global business aviation services company. During this conversation, Schmidt reiterated that back-to-back transactions are illegal under federal law and violate the ethical rules of the Washington State Bar. Schmidt said that Freestream would try to structure the sale to Shvetsova's buyer as a back-to-back transaction, and the buyer would be "significantly disadvantaged by that." When Shvetsova reminded Schmidt that he had previously called back-to-back transactions "illegal, essentially," Schmidt agreed. He said that a broker in these transactions is not "a real, bona fide seller" and called the transactions "completely unethical."

## PROCEDURAL HISTORY

Plaintiffs filed this action in the United States District Court for the District of Nevada, seeking compensation for defamation and injunctive relief against further defamatory statements.  Plaintiffs allege that Schmidt's statements at the NBAA meeting were false and defamatory because Freestream does not engage only in back-to-back transactions and those transactions are not illegal.  Plaintiffs allege that the defamatory statements harmed their business because reputation is critically important in the private aviation industry, which enjoys a particularly tight-knit market.

Defendants filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to change venue to the Western District of Washington.  The district court granted Defendants' motion to dismiss for lack of personal jurisdiction without addressing whether venue transfer would be appropriate.  This appeal timely followed.

## STANDARD OF REVIEW

We review de novo the district court's dismissal for lack of personal jurisdiction. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671 (9th Cir. 2012).  The factual findings underlying the district court's jurisdiction determination are reviewed for clear error. *Panavision, Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  To avoid dismissal, the plaintiff bears the burden of demonstrating that its allegations establish a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor. *Rio*

*Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

## DISCUSSION

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *Boschetto*, 539 F.3d at 1015. Nevada's jurisdiction reaches the limits of due process set by the United States Constitution. Nev. Rev. Stat. § 14.065. Constitutional due process requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984). Plaintiffs concede that the allegations in the complaint do not support the exercise of general jurisdiction,[2] and so we address only specific jurisdiction here.

As to specific jurisdiction, we generally conduct a three-part inquiry—commonly referred to as the minimum contacts test—to determine whether a defendant has sufficient contacts with the forum to warrant the court's exercise of jurisdiction:

---

[2] General jurisdiction exists when the defendant's contacts with the forum state are so "continuous and systematic" as to render the defendant essentially "at home" in that forum. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The minimum contacts test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]" *Burger King Corp. v. Redzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted).

Under the minimum contacts test and the applicable authority, we conclude that there was specific jurisdiction in Nevada in this case.

## I.

## A.

Generally, "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test]." *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058,

1064 (9th Cir. 1985); *see also Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state . . . ."). We applied that rule in *Paccar* and held that a non-Californian defendant could be sued in California for an allegedly fraudulent demand for payment made to a California entity. 757 F.2d at 1064. We found that "[t]he inducement of reliance in California [was] a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action [arose] out of that inducement." *Id.* (first alteration in original) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977)).

The same is true here: Schmidt's allegedly defamatory statement was made in Nevada, and the cause of action arises from that statement. Because Plaintiffs allege that Defendants committed the intentional tort of defamation while present in the forum state, the first two prongs of the minimum contacts test are satisfied here. *See Paccar*, 757 F.2d at 1064.

## B.

Rather than look to the location of allegedly intentional tortious conduct, the district court's minimum contacts analysis centered on what has become known as the "effects doctrine" or "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984).**[3]** The district court's reliance on the *Calder* effects

---

**[3]** Under the *Calder* effects test, purposeful direction exists when a defendant allegedly: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

test was misplaced, however, because the inquiry under that test focuses on conduct that takes place *outside* the forum state and that has effects inside the forum state.  Because some of our past opinions have suggested that *Calder* is also the starting place for conduct that takes place inside the forum state, we take this opportunity to clarify our case law.

A review of the development of our jurisprudence in this area is helpful.  In *Data Disc, Inc.*, we reaffirmed the minimum contacts test for evaluating the "nature and quality of the defendant's contacts in relation to the cause of action," and held that "[t]he inducement of reliance [within the forum state] is a sufficient act . . . to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement."  557 F.2d at 1287–88.  At that time, the first prong of our minimum contacts test referred only to purposeful availment and made no mention of purposeful direction.  *See id.* at 1287.

Then, in *Calder v. Jones*, the Supreme Court established the effects test, whereby a defendant can be subject to personal jurisdiction based on "intentional conduct [outside the forum] calculated to cause injury to [a plaintiff] in [the forum]."  465 U.S. at 791.  We first cited *Calder* for that proposition in *Gilbert v. DaGrossa*, in which the plaintiff filed suit in Washington, but alleged that the defendants worked in New York and New Jersey and that the allegedly tortious acts occurred in those two states.  756 F.2d 1455, 1459 (9th Cir. 1985).  After noting that there was "neither an allegation nor evidence that the [defendants] ever transacted any business, or committed any tortious act or acts, within the state of Washington," we "recognize[d] that the 'effects' doctrine may also serve as a basis for a finding of in personam jurisdiction."  *Id.* at 1459 & n.4.  Ultimately, because there was no evidence that the alleged activities had

an effect in Washington, we held that the effects test was not satisfied. *Id.* at 1459 n.4.

What was implicit in *Gilbert*—that an allegation of tortious activity within the forum state would likely have supported the exercise of personal jurisdiction—was decided in *Paccar*. *Paccar*, 757 F.2d at 1064 ("The commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].").[4]

Over the next few years, we reaffirmed (1) "that the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state," *Ballard*, 65 F.3d at 1498, and (2) that *Calder* extended the reach of personal jurisdiction to a defendant who never physically entered the forum state. *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) ("[W]ithin the rubric of 'purposeful availment' the [Supreme] Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state.").

In *Schwarzenegger v. Fred Martin Motor Co.*, we again described the purposeful direction test as applying to out-of-forum conduct. 374 F.3d at 802. We explained that "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions *in* the forum, such as

---

[4] *Paccar* also suggested that "[a] tortious act, standing alone, can satisfy all three requirements [of the minimum contacts test] if the act is aimed at a resident of the state or has effects in the state." 757 F.2d at 1064 (citing *Calder*, 465 U.S. at 788–89).

executing or performing a contract there." *Id.* (emphasis added). By contrast, "[a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions *outside* the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803 (emphasis added). We also noted that a purposeful availment analysis is "most often used in suits sounding in contract," whereas a purposeful direction analysis is "most often used in suits sounding in tort." *Id.* at 802.

Read together, those statements comparing within-forum-state versus out-of-forum-state conduct, and contract versus tort actions, suggest that a purposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state. *See* C. Douglas Floyd and Shima Baradaran-Robison, *Toward a Unified Test of Personal Jurisdiction in an Era of Widely Diffused Wrongs: The Relevance of Purpose and Effects*, 81 Ind. L.J. 601, 624 (2006) ("In *Schwarzenegger v. Fred Martin Motor Co.*, the Ninth Circuit distinguished between 'purposeful availment,' applicable in contract and other cases involving the conduct of business within a state, and 'purposeful direction,' applicable in tort cases involving *extraterritorial* conduct, equating the purposeful direction (but not the purposeful availment) standard with the *Calder* effects test." (emphasis added)). Nonetheless, the district court here relied on our observation that a purposeful direction analysis is "most often used in suits sounding in tort," *Schwarzenegger*, 374 F.3d at 802, and applied the *Calder* effects test on that basis.

Although rigidly applying the *Calder* effects test without taking into account where the allegedly tortious conduct

occurred conflicts with our approach in *Paccar*, we may have unwittingly contributed to the district court's error by suggesting otherwise in a couple of our subsequent opinions. In *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, we stated, "In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (citing *Schwarzenegger*, 374 F.3d at 803). We then analyzed, under the effects test, the defendants' act of intentionally filing suit in France, which resulted in a French court's orders directing the plaintiff to take actions in the forum state. *Id.* at 1209. Notably, we did not apply the effects test to the defendants' contacts that occurred *within* the forum—the sending of a cease and desist letter to, and service of process on, Yahoo!. *Id.* at 1206, 1209. Similarly, in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, we suggested that an effects test would apply "whether or not the actions themselves occurred within the forum," but, again, we did so in the context of assessing out-of-forum-state conduct. 647 F.3d 1218, 1228–29 (9th Cir. 2011) (applying effects test to company's out-of-forum posting of allegedly infringing photos on website aimed at forum state). Importantly, unlike the case at hand, neither *Yahoo!* nor *Mavrix* involved an alleged tort committed while the defendant was physically present in the forum state.

This review of the history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state. *Paccar* was rooted in the well-settled understanding that the commission of a tort within the forum state usually supports the exercise of

personal jurisdiction.  *See* Judge Beverly Reid O'Connell and Judge Karen L. Stevenson, Federal Civil Procedure Before Trial ¶ 3:161–162 (Rutter Group Nat. Ed. 2017) ("If the nonresident committed the liability-producing acts while physically present in the forum state, this is almost always held a sufficient 'contact' to support personal jurisdiction in lawsuits arising from those acts. . . . This principle is most frequently encountered in cases involving torts committed by nonresidents while temporarily in the state."); *see also Elkhart Eng'g Corp. v. Dornier Werke*, 343 F.2d 861, 868 (5th Cir. 1965) ("When a non-resident has voluntarily entered a state and invoked the protections of [its] laws, it does not in our view offend 'traditional notions of fair play and substantial justice' to require the non-resident to answer in the courts of that state for any tortious acts committed while there."); *Kilpatrick v. Texas & P.R. Co.*, 166 F.2d 788, 791 (2d Cir. 1948) ("It is settled that, given the proper procedural support for doing so, a state may give judgment in personam against a non-resident, who has only passed through its territory, if the judgment be upon a liability incurred while he was within its borders.").

The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors.  *See Martensen v. Koch*, 942 F. Supp. 2d 983, 994 (N.D. Cal. 2013) ("[T]he 'effects' test appears unnecessary where, as here, part of the alleged tort occurred in [the forum]."); *see also Nelson v. Millennium Labs., Inc.*, No. 2:12-CV-01301-SLG, 2012 WL 12826476, at *3 (D. Ariz. Oct. 2, 2012) (relying on *Paccar* to find the first prong of the minimum contacts test satisfied where the defendant committed an intentional tort within the forum state).

**C.**

Defendants urge us to follow our recent opinion in *Morrill v. Scott Financial Corp.*, 873 F.3d 1136 (9th Cir. 2017), instead of *Paccar*. In *Morrill*, the plaintiffs, residents of Arizona, filed suit in Arizona and alleged that the defendants engaged in conduct aimed at the forum state because the defendants filed suit against the plaintiffs for defamation in Nevada and then served process, sought subpoenas, and engaged in other allegedly abusive litigation-related tactics in Arizona. *Id.* at 1142–43. We found that because the defendants had not expressly aimed their conduct at Arizona, personal jurisdiction was lacking. *Id.* at 1142–49.

At first blush *Morrill* appears to conflict with *Paccar*, since some of the conduct did occur in Arizona. But the allegedly tortious conduct in *Morrill* was materially different from that in *Paccar* and here. Namely, it was the litigation— and only the litigation—that brought the *Morrill* defendants to Arizona. We explained:

> Defendants' conduct in Arizona occurred as part of the required process for pursuing discovery and serving Plaintiffs in connection with the litigation in Nevada. The outcome would be different if, as suggested by the hypothetical presented by the dissent, an attorney had traveled to Arizona, not to appear at a hearing on a motion to quash a subpoena, but to throw a rock through the window of the Arizona residence of opposing counsel in litigation that was pending in Nevada. The reason for such inappropriate conduct could have been the animosity between counsel that resulted from their

> interaction during the litigation in Nevada.
> However, the throwing of the rock would not
> have been required, or in any manner
> justified, by the litigation process there.

*Id.* at 1148. Because the Nevada litigation *required* the defendants to conduct activity in Arizona (where the plaintiffs happened to reside), and the defendants thus were not in the forum state of their own volition, they had not availed themselves of the forum under the minimum contacts test. *See id.* at 1146–47 ("[P]hysical entry that is merely incidental to an out-of-state transaction does not satisfy the constitutional minimum contacts requirement."). By contrast, in the instant case, Schmidt *voluntarily* traveled to Nevada to attend the aviation industry conference, and *voluntarily* agreed to speak with Shvetsova and Khalek there. In other words, Schmidt threw *Morill*'s hypothetical rock.

We therefore reject Defendants' invitation to find that *Morill*, rather than *Paccar*, applies to the circumstances here.

## II.

Having found that Plaintiffs satisfied the first two prongs of the minimum contacts test under *Paccar*, we now turn to the third prong. Defendants have the burden of presenting a "compelling case that the presence of some other considerations would render jurisdiction [in Nevada] unreasonable." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Burger King*, 471 U.S. at 477); *see also Schwarzenegger*, 374 F.3d at 802. To evaluate reasonableness, we use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful

interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Paccar*, 757 F.2d at 1064–65.

### *(1) Extent of the purposeful interjection into the forum state*

Defendants assert that they are residents of Washington who did not interject themselves into any of Nevada's affairs. They contend that there are no allegations in the complaint to support an inference that Schmidt went to Nevada specifically to commit intentional torts against Plaintiffs or to solicit clients. Defendants sum up their argument as such: "Attending a conference, and republishing an allegedly defamatory statement first published in another state, should not be a basis for personal jurisdiction."

But Defendants' contacts with Nevada are not so attenuated. Plaintiffs allege that Schmidt intentionally traveled to Nevada to participate in the 2015 convention on behalf of Aero. Aero also regularly solicits business in Nevada for its law practice, including through participation in industry meetings and conventions there. Accordingly, this factor weighs in favor of the exercise of personal jurisdiction over Defendants in Nevada.

### *(2) Burden on defendant of defending in the forum*

Defendants contend that they would suffer a financial hardship and be unduly burdened by having to travel to Nevada to attend depositions and court appearances.

Relatedly, they argue that, as attorneys, they would want to be "heavily involved in the defense of their case," and this would require them to become acquainted with Nevada law and procedures.

This factor cuts in favor of Defendants, but barely. True, Defendants would be burdened by having to travel to Nevada. But Defendants have not presented evidence that the "inconvenience is so great as to constitute a deprivation of due process." *Panavision*, 141 F.3d at 1323 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995)). As Plaintiffs point out, Defendants regularly do business around the country, including in Nevada, and we have previously noted that "modern advances in communications and transportation have significantly reduced the burden of litigating in another [forum]." *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Moreover, it is not at all clear that learning the law and procedure of another state would unduly burden Defendants, who operate a global law practice and provide services to clients "worldwide."

### (3) Extent of conflict with the sovereignty of defendant's state

Defendants assert that Schmidt qualified his statements to Shvetsova and Khalek as being based on Washington law, and "[a]s the case revolves around communications made to clients and potential clients, the law on disclosure of attorney-client privileged documents in Washington may differ from the state law established in Nevada." Plaintiffs respond that there should be no concern about a potential conflict of laws regarding attorney-client privilege because there was no legal representation involved. Indeed, Defendants seemed to take this very position in their answering brief where they stated, "Plaintiffs do not contend

that legal representation was solidified" between Aero and Shvetsova and Khalek. This factor weighs in favor of Plaintiffs.

### (4) Forum state's interest in adjudicating the dispute

Defendants argue that Nevada has no interest in disciplining Washington attorneys for their alleged misconduct involving foreign citizens. Defendants also contend that the aviation industry has ties to Washington, so Washington has a greater interest in the underlying subject matter of the case.

Plaintiffs argue that this is not a legal malpractice claim, but a tort case, so the Washington State Bar's interest in disciplining its attorneys is irrelevant. Plaintiffs also contend that Nevada has a strong interest in adjudicating cases involving intentional torts committed within the state.

Defendants may be right that Nevada generally does not have a significant interest in "policing utterances and comments made by travelers in the state." But although Nevada's interest in this case may have been stronger if Plaintiffs were Nevada residents, Nevada does have an interest in torts allegedly committed within its borders (namely, preventing them). *See Data Disc*, 557 F.2d at 1288 ("A state has a special interest in exercising jurisdiction over those who have committed tortious acts within the state."). Washington's interest in the matter, as home to Defendants and a Boeing distribution center,[5] is outweighed by

---

[5] The parties dispute whether Boeing Business Jet's headquarters is in Washington.

Nevada's interest.  Therefore, this factor weighs in favor of finding personal jurisdiction over Defendants in Nevada.

### (5) Most efficient judicial resolution of the controversy

Defendants contend that Schmidt made his statements about the legality of back-to-back transactions based on his understanding of Washington law, so it would be more efficient for matters concerning Washington law to be resolved in Washington.  Defendants' argument misses the mark.  This factor depends "primarily [on] where the witnesses and the evidence are likely to be located." *Menken v. Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007).  Here, the witnesses reside in several different fora (including foreign nations).  And this factor is "no longer weighed heavily given the modern advances in communication and transportation." *Harris Rutsky*, 328 F.3d at 1133 (quoting *Panavision*, 141 F.3d at 1323).

This factor may weigh slightly in favor of Defendants, given that the burden for the foreign plaintiffs and witnesses to travel to Washington (as opposed to Nevada) is minimal, but it is more likely neutral since it is also reasonably efficient to convene at the place of the wrongful conduct— Nevada.

### (6) Importance of the forum to plaintiff's interest in convenient and effective relief

Defendants argue that Nevada is not a convenient location for any of the parties, and they stress that Plaintiffs have demonstrated no personal connection to Nevada.  In response, Plaintiffs note the significant time and resources invested in the litigation in Nevada thus far and the great inconvenience should they have to refile elsewhere.  Plaintiffs also point out that their counsel is located in

Nevada. This factor weighs slightly in favor of Plaintiffs, but we generally do not give it much weight. *See Dole Food Co.*, 303 F.3d at 1116.

### *(7) Existence of an alternative forum*

Defendants contend that there are alternative fora because, "[a]ccording to the complaint, Aero allegedly made defamatory statements or interrupted Plaintiffs' business in two other instances in different locations." This argument directly undermines Defendants' main argument that allegedly making defamatory statements in a particular forum is not sufficient to confer jurisdiction in that forum.

Defendants also renew their argument that Washington is the better forum. Plaintiffs bear the burden of proving the unavailability of an alternative forum, *see Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), but Plaintiffs agree that Washington would have personal jurisdiction over Defendants because Aero and Schmidt are domiciled there. Therefore, this factor weighs in favor of Defendants. *See Harris Rutsky*, 328 F.3d at 1134.

\* \* \*

The seven-factor balancing test weighs in Plaintiffs' favor, or, at best, is "a wash." *Id.* Therefore, Defendants have failed to make a compelling case that the district court's exercise of personal jurisdiction over them would be unreasonable, particularly in light of Nevada's strong interest in adjudicating matters involving intentional torts committed within the State.

## CONCLUSION

Because all three prongs of the minimum contacts test for specific jurisdiction are satisfied, we hold that Nevada's exercise of personal jurisdiction over Defendants comports with constitutional due process.**[6]**  Accordingly, we reverse the district court's dismissal of the complaint.

**REVERSED AND REMANDED.**

---

**[6]** Having determined that there is personal jurisdiction over Defendants in Nevada, we need not reach the question of whether the district court erred in refusing to transfer the case to a different venue in lieu of dismissal.