IV. LEGAL STANDARDS
When subject matter jurisdiction is based on a federal question, as is the case here, a federal court applies the long-arm statute of the state in which it sits to determine whether there is personal jurisdiction. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002). California's long-arm statute provides that personal jurisdiction extends as far as federal due process allows. Daimler AG v. Bauman, 571 U.S. 117, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014) (applying California law). Under this standard, specific personal jurisdiction exists where:
(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.
Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ).
To decide whether the first prong is met in tort cases, the Ninth Circuit applies the "effects test" set forth in Calder v. Jones, which "is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state." Love v. Associated Newspapers, Ltd., 611 F.3d 601, 609 (9th Cir. 2010) ; see also, 465 U.S. 783, 104 S.Ct. 1482.[2] The Ninth Circuit has held that a *934 case brought under the First Amendment, asserting that a foreign court's order is unenforceable by an American court, is likewise analyzed under the "effects test." Yahoo!, 433 F.3d at 1206.
Under this test, courts determine whether "the defendant has directed his actions at the forum state, even if those actions took place elsewhere." Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015). "An intentional act is one denot[ing] an external manifestation of the actor's will ... not includ[ing] any of its results, even the most direct, immediate, and intended." Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1142 (9th Cir. 2017) (internal citations omitted). "[R]andom, fortuitous, or attenuated contacts are insufficient to create the requisite connection with the forum." Id.
The decision to grant or deny a plaintiff's motion for default judgment is soundly within this Court's discretion. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court may evaluate the following factors in considering a motion for default judgment:
(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.
NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (citing Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (the " Eitel factors") ). In assessing default judgment, the factual allegations in the complaint are taken as true. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 916-17 (9th Cir. 1987). As EFF seeks default judgment in the form of declaratory relief stating that GEMSA's injunction is unenforceable under the SPEECH Act, EFF "bear[s] the burden of establishing that the foreign judgment would not be enforceable." 28 U.S.C. § 4104 (a)(2).
V. DISCUSSION
A. Whether the Court has jurisdiction over GEMSA
When, as here, entry of judgment is sought against a party who has failed to plead or otherwise defend the action, the Court has an affirmative duty to determine whether it has jurisdiction over the subject matter and the parties. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). At the outset, the Court agrees with and adopts the portions of the well-reasoned R & R concluding that the Court has subject matter jurisdiction over the claims and that GEMSA was properly served. ECF No. 23, at 6, 10-12. Remaining at issue, however, is whether the Court has specific personal jurisdiction over GEMSA.[3]
As is relevant here, specific personal jurisdiction exists where: (1) the defendant purposefully availed itself, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. Pebble Beach, 453 F.3d at 1155. The first prong is analyzed under the effects test which "is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state." Love, 611 F.3d at 609.
EFF alleges that this Court has specific personal jurisdiction over GEMSA under *935 these standards because GEMSA: (1) emailed EFF a demand letter in August 2016 demanding that EFF take certain actions which would infringe on EFF's First Amendment rights in California; (2) obtained a court injunction that required EFF to carry out those acts in California; (3) engaged an agent to physically present EFF a copy of the injunction in California; (4) mailed a second demand letter to California threatening to enforce the injunction and demanding that EFF remove the article, pay $750,000, and engage with California based internet companies to deindex the article;[4] and (5) carries out significant litigation activities in this district, including when its director entered California for a mediation and deposition regarding the same '400 patent at issue in this case. Compl. ¶ 8, 19-34; ECF No. 27 at 15-16.
1. The applicability of Walden v. Fiore
The Court first addresses EFF's contention that the R & R misapplies Walden in concluding that the Court lacks personal jurisdiction over GEMSA. ECF No. 27 at 11-12.
In Walden, the Supreme Court expressly reaffirmed the Calder effects test, which guides this Court's analysis, but narrowed its application by holding that "the plaintiff cannot be the only link between the defendant and the forum." Walden, 134 S.Ct. at 1122. The Court held that while "the parties' relationships with each other [continue to] be significant in evaluating their ties to the forum," Walden, 134 S.Ct. at 1123 (quotation omitted), "a defendant's relationship with a plaintiff or third party, standing alone , is an insufficient basis for jurisdiction," id. (emphasis added). But Walden did not eliminate the plaintiff/defendant relationship from consideration. Post- Walden cases in the Ninth Circuit and in this district have continued to consider contacts between a plaintiff and a defendant, along with the defendant's other contacts with the forum, in finding personal jurisdiction. See RHUB Commc'ns, Inc. v. Karon, No. 16-CV-06669-BLF, 2017 WL 3382339, at *7 (N.D. Cal. Aug. 7, 2017) (concluding that because Walden directed the court to focus on the defendant's contacts with the forum states itself, and not to limit its analysis to contacts with the plaintiff, such a showing was made where defendant initiated contact with employees in the forum state); Bittorrent, Inc. v. Bittorrent Mktg. GMBH, No. 12-CV-02525-BLF, 2014 WL 5773197, at *5-8 (N.D. Cal. Nov. 5, 2014) (finding personal jurisdiction where a trademark infringement scheme hurt plaintiff's reputation, and therefore injured the California-based plaintiff in California despite the cybersquatting occurring in Germany); see also Picot, 780 F.3d at 1215 (finding the effects test was not met because, as in Walden, the injury was "not tethered to California in any meaningful way" because the conduct occurred fully out of state).
The Walden court found no personal jurisdiction because there was no conduct in the forum state, and the only connection between the defendant and that forum was the harm the plaintiffs felt, which could have been felt in any state. Walden, 134 S.Ct. at 1125-26. Plaintiffs filed suit in Nevada in response to the defendant seizing their gambling winnings as they attempted to board a plane from Georgia to Nevada. Id. at 1119. The conduct in question occurred in Georgia, not in Nevada. The defendants did nothing to reach out to the plaintiffs in Nevada-the forum *936 state-and the plaintiffs maintained residences in both Nevada and California. Id. The Court found that the harm at issue, the deprivation of money, was not "tethered to Nevada in any meaningful way" because it would have been felt in any state the plaintiffs chose to be in (and the plaintiffs in fact maintained residences in multiple states). Id. at 1125. In short, Walden stands for the proposition that a defendant's relationship to the forum must rely on something other than merely "random, fortuitous, or attenuated contacts." Id. at 1123 (internal citation omitted).
Here, by contrast, there are two instances of relevant conduct that are neither random nor attenuated in their relationship to the forum: (1) an injunction granted in an Australian court, and (2) a threat to enforce that injunction in California should the current motion be denied. Unlike the seizure at issue in Walden, the effects of these actions cannot be felt with equal force just anywhere. Indeed, California may properly be said to be the epicenter of the parties' dispute. EFF is a California nonprofit whose employees, and a significant amount of donors and readers, are located in the state. ECF No. 29-2. EFF uttered the challenged speech here. If the injunction is enforced, the actions to take the speech down will occur here. Likewise, the harm to EFF will also occur here. Cf. id.; see also Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., --- U.S. ----, 137 S.Ct. 1773, 1782, 198 L.Ed.2d 395 (2017) (rejecting specific jurisdiction where the plaintiffs were not California residents, did not claim to have suffered harm in California, and all the conduct giving rise to claims occurred elsewhere). Walden is relevant to the court's determination, but it does not defeat the exercise of specific personal jurisdiction. Both the conduct at issue, and the effect of that conduct, are substantially more tethered to the forum than in Walden.
2. GEMSA purposefully directed its conduct toward California
The Calder effects test requires the Court first to conduct a purposeful direction analysis. "Purposeful direction 'requires that the defendant ... (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' " Morrill, 873 F.3d at 1142 (quoting Schwarzenegger, 374 F.3d at 802 ). With regard to foreign acts, the effects test is satisfied when the conduct is both aimed at and has effect in the forum state, even if some or all of the challenged conduct occurred outside of the country. Pebble Beach, 453 F.3d at 1156 (citing Calder, 465 U.S. 783, 104 S.Ct. 1482 ). "[T]he 'brunt' of the harm need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." Yahoo!, 433 F.3d at 1207. The Court addresses each of the elements of the effects test in turn.
a. GEMSA committed an intentional act
For conduct to be "intentional," the defendant must act with the "intent to perform an actual, physical act in the real world." Schwarzenegger, 374 F.3d at 806. In conjunction with obtaining the Australian injunction by bringing a complaint and actively ligating that complaint in the Supreme Court of South Australia, GEMSA sent EFF a demand letter via email, as well as a demand letter and copy of the injunction via paper mail.[5] GEMSA initiating a lawsuit and sending correspondence *937 specifically addressed to EFF surely constitutes "intentional acts." See Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068-70 (9th Cir. 2017) (finding that putting a logo on a newsletter and sending it to a list of recipients was an intentional act). There is no question these acts were purposefully done and thus, the first prong is satisfied.
b. GEMSA's conduct was expressly aimed at California
The second prong requires EFF to demonstrate that GEMSA "expressly aimed" the aforementioned intentional acts at California. Schwarzenegger, 374 F.3d at 806. GEMSA engaged in several activities expressly aimed at the forum state by: (1) sending two demand letters to EFF in California, (2) obtaining an Australian injunction requiring EFF to take significant steps in California, and (3) serving EFF with the injunction at its office in California.[6]
The first and third of these facts have little significance on their own. "A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." Yahoo!, 433 F.3d at 1208 (citation omitted) (emphasis added). Similarly, the Ninth Circuit does "not regard the service of documents in connection with a suit brought in a foreign court as contacts that by themselves justify the exercise of personal jurisdiction over a foreign litigant in a United States court." Id. at 1209. "If we were to hold that such service were a sufficient basis for jurisdiction, we would be providing a forum-choice tool by which any United States resident sued in a foreign country and served in the United States could bring suit in the United States, regardless of any other basis for jurisdiction." Id. However, the Court can consider both GEMSA's sending of a demand letter and the service of process in California along with other factors in determining whether jurisdiction is appropriate. Id. at 1208-09.
GEMSA's Australian injunction is more significant to the Court's analysis. The injunction calls for a California nonprofit to carry out activities in California, including removing the allegedly offending article, along with references to the article found on "any and all other websites." ECF No. 27 at 10. The injunction is similar in effect to the foreign order at issue in Yahoo!, where the Ninth Circuit found that a foreign order which required "that significant acts ... be performed in California" satisfied the "expressly aimed" analysis. Yahoo!, 433 F.3d at 1209. The Ninth Circuit held that "to the extent that any financial penalty might be imposed pursuant to the French court's orders, the impact of that penalty would be felt by Yahoo! at its corporate headquarters in California." Id. Similarly here, EFF's principal place of business is in California, and therefore its *938 only means of compliance would require performance of significant acts akin to those required in Yahoo!. Moreover, many of the search engines EFF would have to engage in order to deindex its articles are also located in California. ECF No. 14 at 13 n.2.
In fact, all three of these actions-the demand letter, service of process, and the Australian injunction-are similar to the actions the Ninth Circuit found sufficient to satisfy the effects test in Yahoo!. In Yahoo!, the defendants sent a cease and desist letter and served pleadings from a lawsuit in France to Yahoo!'s offices in California. Id. at 1208-09. The defendants also obtained court orders from the French court requiring Yahoo!'s offices in California to disable access to the offending sites. Id. at 1209-11. Although the defendants took no action to enforce the orders in the United States, the defendants did not make a binding promise not to do so, and so-as with the injunction here-the threat of legal action remained. Id. at 1210-11.
For the aforementioned reasons, the Court finds that the second prong is satisfied.
c. GEMSA's conduct caused harm that it knew was likely to be suffered in California
As for the third prong of the effects test, it is clear that any harm or effect caused by GEMSA's conduct would be suffered by EFF in California. An organization "can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business.' " RHUB, 2017 WL 3382339, at *7 (citing Dole Food Co. v. Watts, 303 F.3d 1104, 1113 (9th Cir. 2002) ). A court in this district determined that when a defendant sent correspondence regarding "a project explicitly located in California" and made threats to "specifically go after" the California plaintiff's customers, some of whom were in California, sufficient conduct occurred in California for the purposes of personal jurisdiction under the Calder test. Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC., No. 15-CV-04538-MEJ, 2016 WL 6699295, at *2-4 (N.D. Cal. Sept. 30, 2016), adopted by, No. 3:15-CV-04538-JD, 2016 WL 6679548 (N.D. Cal. Nov. 14, 2016).[7]
EFF's principal place of business is here in California and EFF has suffered harm *939 here. ECF No. 29-2 (EFF's office, which it owns, is in San Francisco and it carries out its operations and banking here). The injunction seeks to remove the existing article and prevent EFF from writing about GEMSA's patents in the future, limiting EFF from fulfilling its purpose as an advocate for U.S. patent reform. All of this conduct, were EFF to comply, would be carried out at EFF's offices in California. Compl. ¶ 8, 19-34; ECF No. 27 at 15-16; ECF No. 29-2 (EFF's services and operations are in California). Moreover, EFF currently fears the threat of the injunction's enforcement in California. Compl. ¶ 38. Even if GEMSA did not pursue enforcement of the Australian injunction, "the very existence of th[e] order[ ] may be thought to cast a shadow on the legality" of EFF's speech. Yahoo!, 433 F.3d at 1211.
Additionally, the effects of the injunction include limiting the information available to EFF's California readers who "have a right to receive speech on matters of public concern." ECF No. 27 at 21. "More than one-fifth of EFF's active donors, constituting over 8,500 people are Californians" and "over 48,000 Californian's subscribe to EFF's newsletter." ECF No. 27 at 20. The Court has recognized that "the right to receive ideas follows ineluctably from the sender's First Amendment right" and is therefore "an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution." Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 867, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982) (citation omitted); see also Martin v. Struthers, 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) ("The right of freedom of speech and press ... embraces the right to distribute literature, and necessarily protects the right to receive it." (citation omitted) ). Even if EFF was to move its principal place of business, the potential harm created by defendant's conduct would still affect California residents. See Mountz, 2016 WL 6699295, at *4 ; see also Picot, 780 F.3d at 1215 (finding that where a defendant's injury was an inability to access funds, a jurisdictionally relevant effect was not shown because the "injury is entirely personal to him and would follow him wherever he might choose to live or travel.").[8]
Several factors weigh in favor of finding that GEMSA's conduct was "expressly aimed" at California: (1) the significant actions that the injunction requires to be taken in California, (2) the location of EFF's principal place of business in California, (3) the chilling of EFF's free speech in California, and (4) the violation of the readers' First Amendment rights to receive speech on matters of public concern. Thus, the third prong of the effects test is satisfied and the court concludes that GEMSA has purposefully directed its conduct towards California.
3. EFF's claims arise out of GEMSA's California-related activities
Finding that the first prong of the specific jurisdiction test, the effects test, is met, the Court moves on to assess whether the second and third prongs are also satisfied. As to the second prong, to properly exercise specific jurisdiction, "the contacts constituting purposeful availment must be the ones that give rise to the current suit." Campanelli v. Image First Unif. Rental Serv., Inc., No. 15-CV-04456-PJH, 2016 WL 4729173, at *4 (N.D. Cal. Sept. 12, 2016) (quoting Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1088 (9th Cir. 2000) ). This element is met if "but for" the contacts between the *940 defendant and the forum state, the cause of action would not have arisen. Id. (citing Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995) ). Here, this standard is clearly met because the SPEECH Act would not be triggered, and this lawsuit would not be before this Court, were it not for GEMSA's contacts directed at California. In other words, the contacts constituting purposeful direction under the effects test, namely GEMSA's injunction and threatening demands, directly give rise to EFF's SPEECH Act and Declaratory Judgment Act claims.
4. The exercise of personal jurisdiction is reasonable
Finally, for the third prong, GEMSA has not responded to EFF's motion and therefore it has not met its burden of "present[ing] a compelling case" that the exercise of personal jurisdiction would be unreasonable. See Schwarzenegger, 374 F.3d at 802. In addition, GEMSA is engaged in several active patent infringement cases in this district. ECF No. 27 at 9. GEMSA retained local counsel in connection with the transferred cases. ECF No. 29-3 at 4. Moreover, GEMSA's principle, Schumann Rafizadeh, physically attended mediations and depositions in San Francisco in connection with this litigation. Id.; see also ECF No. 27 at 9. A defendant's "ongoing participation" in litigation in the forum "undercuts any argument that subjecting it to suit in [another case] would fail to 'comport with fair play and substantial justice.' " In re Optical Disk Drive Antitrust Litig., No. 10-MD-02143-RS, 2015 WL 1926635, at *2 (N.D. Cal. Apr. 28, 2015) (quoting Burger King, 471 U.S. at 477, 105 S.Ct. 2174 ).
For all these reasons, the Court concludes that the exercise of personal jurisdiction is reasonable.
* * *
In sum, the Court concludes that all three prongs are met, and the Court has specific personal jurisdiction over GEMSA. Because the Court also has subject matter jurisdiction over the case and service of process was proper, see supra, the Court concludes that it has jurisdiction and accordingly considers the merits of EFF's motion for default judgment.
B. Whether Default Judgment should be entered
The Ninth Circuit has stated that default judgment is a "two-step process," which consists of: (1) seeking the clerk's entry of default, and (2) filing a motion for entry of default judgment. Eitel, 782 F.2d at 1471. EFF requested and received entry of default by the clerk as required by Rule 55(b)(1) of the Federal Rules of Civil Procedure. ECF No. 35, 36. EFF has also filed a motion for the entry of default judgment. ECF No. 14. The Court evaluates the following Eitel factors in considering whether to grant EFF's motion for default judgment:
(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.
NewGen, 840 F.3d at 616 (citing Eitel, 782 F.2d at 1472 ).
1. Prejudice to Plaintiff
The first factor favors granting default judgment. As EFF alleges, the nonprofit is suffering, and will continue to suffer, irreparable injury to its First Amendment right to speak and advocate *941 absent this Court's intervention. Compl. ¶ 38. EFF feels its speech is chilled by the Australian injunction. Id. Specifically, EFF alleges that it feels constrained from speaking about any of GEMSA's patents, as the injunction sweeps that broadly. Id. ¶ 39. EFF's fears are understandable. The injunction itself threatens that if EFF does not remove the article, cease disseminating it, and restrain from publishing any content regarding GEMSA's intellectual property, EFF's "assets may be seized" and its "directors and other officers may be liable to be imprisoned." Id. ¶ 34. EFF appears to be violating the Australian injunction because it has not removed the Article and does not intend to do so. Id. ¶ 36; See Yahoo!, 433 F.3d at 1215-18 (holding a case was not ripe for review because a company was voluntarily in compliance with a foreign judgment challenged as repugnant to the laws of the U.S.). Moreover, after entry of the Australian injunction, GEMSA sent a threatening demand letter demanding that EFF pay $750,000 in damages, and alleging EFF is in contempt of court. Id. ¶ 35.
In sum, EFF convincingly argues that it would be prejudiced absent the entry of default judgment, as it would be forced to operate under a restriction on, or shadow over, its First Amendment rights. See Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The first Eitel factor therefore weighs in favor of default judgment.
2. Sufficiency of the complaint and likelihood of success on the merits
The second and third Eitel factors, in combination, ask whether EFF's complaint is sufficient, and whether this complaint, along with other judicially noticed facts or documents augmented to the record, show EFF is likely to succeed on the merits. Because the second and third factors are so closely related, the Court examines them together. See Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1055, 1060 (N.D. Cal. 2010).
a. Likelihood of prevailing under the SPEECH Act
The SPEECH Act provides protections for U.S. persons against "libel tourism," which is "a form of international forum-shopping in which a plaintiff chooses to file a defamation claim in a foreign jurisdiction with more favorable substantive law." Trout Point Lodge, Ltd. v. Handshoe, 729 F.3d 481, 487 (5th Cir. 2013) ; see also Securing the Protection of our Enduring and Established Constitutional Heritage Act (SPEECH Act), Pub. L. No. 111-223, § 2(2), 124 Stat. 2380, 2380 (2010) (codified at 28 U.S.C. § 4101 ). The statute provides that U.S. courts "shall not recognize or enforce a foreign judgment for defamation" unless the court determines that the law applied by the foreign jurisdiction is at least as speech-protective as the First Amendment and the law of the forum state, or that the defendant "would have been found liable for defamation by a domestic court applying" U.S. law. 28 U.S.C. § 4102(a) ; see also Trout Point Lodge, 729 F.3d at 488. Such a judgment also cannot be enforced where the foreign court's exercise of jurisdiction did not comport with U.S. due process requirements. 28 U.S.C. § 4102(b)(1). A U.S. person subject to a foreign defamation judgment that does not comply with any one of these three provisions may bring a declaratory judgment action in federal court and obtain a declaration that the foreign order is "repugnant to the Constitution or laws of the United States." Id. § 4104(a)(1), (2).
The Australian injunction is a qualifying order under the SPEECH Act *942 because it is a final judgment on a defamation claim. First, the injunction entered by the Supreme Court of South Australia is a "foreign judgment for defamation" subject to the SPEECH Act. The SPEECH Act defines defamation to include any cause of action "alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person." Id. § 4101(1). Under this broad definition, the Australian injunction accusing EFF of making false, misleading, deceptive, and negligent statements, and causing emotional harm certainly qualifies as a foreign judgment for defamation. ECF No. 14 at 17. Moreover, the reasoning of Hustler Magazine, Inc. v. Falwell, which held that plaintiffs cannot avoid First Amendment restrictions on defamation actions by pleading claims for similar torts such as intentional infliction of emotional distress, also supports finding that the Australian injunction qualifies as a foreign judgment for defamation. 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).
Second, the injunction is a final judgment, as required by the SPEECH Act. Although no final judgment has been issued in the case in the Supreme Court of South Australia,[9] the injunction itself is a final reviewable order under U.S. First Amendment law. The Supreme Court has held that an injunction prohibiting a march was reviewable as a collateral order under 28 U.S.C. § 1257. Nat'l Socialist Party of Am. v. Vill. of Skokie, 432 U.S. 43, 43-44, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977). Accordingly, the injunction is a qualifying order under the SPEECH Act.
As to the merits of the SPEECH Act claim, EFF argues that it is entitled to declaratory relief from the injunction because (1) the law applied by the Supreme Court of South Australia did not "provide[ ] as least as much protection for freedom of speech and press" as the United States and California would, and (2) EFF would not be found liable for defamation in California. 28 U.S.C. § 4102(a)(1) ; see also Trout Point Lodge, 729 F.3d at 488 (describing the difference between the prongs as that "one [is] focused on the law applied by the foreign forum and one [is]focused on the facts the parties presented in the foreign proceeding"). Finally, EFF argues that it would prevail under the SPEECH Act because that Australian Court lacked jurisdiction over EFF as GEMSA failed to properly serve process. 28 U.S.C. § 4102(b). The court addresses each potential SPEECH Act violation in turn.
(1) Whether the law applied in Australia provided as much protection of speech as would U.S. or California law
The Court first asks whether the law applied in Australia provided as much protection for speech as would United States or California law. "The statute does not require that all of a foreign forum's law be coextensive with the First Amendment, but rather only the law applied 'in that case' " was less protective. Trout Point Lodge, 729 F.3d at 496 n.9 (emphasis in original) (quoting 28 U.S.C. § 4102(a)(1)(A) ). There are several reasons why U.S. and California First Amendment law would provide more First Amendment protections than EFF received in the Australian action.
First, the injunction would not withstand U.S. First Amendment scrutiny because it is a prior restraint. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications *943 are to occur." Alexander v. United States, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (quotation and emphasis omitted). "Temporary restraining orders and permanent injunctions-i.e., court orders that actually forbid speech activities-are classic examples of prior restraints." Id. Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). There is a heavy presumption against prior restraints, and they are subject to a strict scrutiny standard of review. In re Dan Farr Prods., 874 F.3d 590, 593 n.2 (9th Cir. 2017). Applying this standard, the Australian court's injunction can only be upheld if GEMSA establishes that "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (2) the [injunction] is narrowly drawn, and (3) less restrictive alternatives are not available." Levine v. U.S. Dist. Court for Cent. Dist. of California, 764 F.2d 590, 595 (9th Cir. 1985) (citations omitted); see also Columbia Broad. Sys., Inc. v. U.S. Dist. Ct., 729 F.2d 1174, 1183 (9th Cir. 1984) ("[U]nder our constitutional system prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances."). The same is true under California law. Gilbert v. Nat'l Enquirer, Inc., 43 Cal.App.4th 1135, 1144, 51 Cal.Rptr.2d 91 (1996).[10]
The Australian injunction cannot strict scrutiny. It is unclear what, if any, governmental interest is served by the injunction, and any such interest could be served by a less broadly sweeping injunction. ECF No. 14 at 13 (restraining all speech about GEMSA's intellectual property). It is thus clear that EFF would have been subject to law much more protective of its speech in California than it was in Australia.
EFF also argues that the Australian injunction would have been subject to an anti-SLAPP motion in California. ECF No. 14 at 23. "California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.' " Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013) (quoting Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003) ). The anti-SLAPP plaintiff-i.e., the defendant in the underlying proceeding-must show that the claim against it arose from an act in furtherance of the plaintiff's free speech rights. Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001). Qualifying acts include statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body," and statements "made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e).
EFF's article was "made in connection with an issue under consideration or review by a legislative ... body" as the article expressly stated that it sought to spur patent reform currently pending before Congress. ECF No. 1-5. Moreover, EFF's article calling attention to aggressive *944 patent litigation is a matter of public interest discussed in a public forum. See Barrett v. Rosenthal, 40 Cal. 4th 33, 65 n.4, 51 Cal.Rptr.3d 55, 146 P.3d 510 (2006) ("Web sites accessible to the public ... are 'public forums' for purposes of the anti-SLAPP statute."); Damon v. Ocean Hills Journalism Club, 85 Cal.App.4th 468, 479, 102 Cal.Rptr.2d 205 (4th Dist. 2000) ("[N]ot only governmental matters, but also private conduct that impacts a broad segment of society" are issues of "public interest[.]"); see also Makaeff, 715 F.3d at 262 (explaining that consumer complaints about Trump University were a matter of public interest).
In the second step of the anti-SLAPP analysis, the burden shifts to the plaintiff, here GEMSA, "to establish a reasonable probability that it will prevail on its claim," a standard under which "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." Makaeff, 715 F.3d at 261. This Court concludes infra that EFF would likely not be found liable for defamation under California law, in assessing the second potential violation of the SPEECH Act. Accordingly, the Court also concludes that GEMSA cannot establish a probability of success on its defamation claim for the purposes of anti-SLAPP, and that EFF has adequately shown that it would receive more protection under California's anti-SLAPP law than the Australian injunction proceeding provided.
In sum, the U.S. and California would provide substantially more First Amendment protection by prohibiting prior restraints on speech in all but the most extreme circumstances, and providing additional procedural protections in the form of California's anti-SLAPP law. EFF demonstrated that GEMSA violated subsection 28 U.S.C. § 4102(a)(1)(A) of the SPEECH Act.
(2) Whether EFF would be found liable for defamation under U.S. and California law
EFF argues that it also prevails on the second prong of the SPEECH Act, as EFF would not be found liable for defamation under California and U.S. law. ECF No. 14 at 24. GEMSA brought a defamation claim on the basis of nine statements in EFF's article:
*945 Alleged Defamatory Statement Alleged Reason Statement is Defamatory (1) GEMSA's patent is "Stupid." GEMSA's patent is not "in fact" stupid. (2) GEMSA's patent has claimed the idea of The statement "does not accurately depict the using virtual cabinets to graphically represent complexities involved with the patent." data storage. (3) GEMSA is suing anyone who runs a GEMSA does not "in fact" sue anyone who website. runs a website. (4) GEMSA is a classic patent troll. GEMSA is not "in fact" a classic patent troll. (5) GEMSA once offered a product that The statement "does not accurately depict the allows users to run multiple operating complexities" of the product. systems. (6) Flash VOS did not invent partitions. EFF did not have reasonable grounds for making the statement. (7) GEMSA's patent claims require very EFF did not have reasonable grounds for specific structures. making the statement. (8) GEMSA seems to think that anyone with EFF did not have reasonable grounds for a website that links to hosted content making the statement. infringes its patent. (9) GEMSA issued patent claims in the EFF did not have reasonable grounds for Eastern District of Texas because local rules making the statement. favor patent trolls.
ECF No. 1-14 at 6-8.[11]
None of these claims could give rise to defamation under U.S. and California law. First, statements 2 and 5-9 are not alleged to be false. ECF No. 1-14 at 7-8; Air Wisconsin Airlines Corp. v. Hoeper, 571 U.S. 237, 134 S.Ct. 852, 863, 187 L.Ed.2d 744 (2014) (a statement must be materially false to be actionable as defamation). As to these statements, GEMSA alleges only that EFF did not have reasonable grounds for making the statements or that the statements "did not accurately depict complexities." ECF No. 1-14 at 6-7.
With regard to Statement 6, that Flash VOS did not invent various technologies, GEMSA appears to be making a claim for trade libel. "Trade libel is defined as an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff." Nichols v. Great Am. Ins. Companies, 169 Cal.App.3d 766, 773, 215 Cal.Rptr. 416 (1985). "A cause of action for trade libel thus requires (at a minimum): (1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages." Id. To allege special damages, a plaintiff must "identify[ ] customers or transactions lost as a result of disparagement, in order to state a prima facie case." Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F.Supp.2d 1035, 1043 (C.D. Cal. 1998). Trade libel also requires proof of actual malice. Melaleuca, Inc. v. Clark, 66 Cal.App.4th 1344, 1350, 78 Cal.Rptr.2d 627 (1998). "A statement is made with actual *946 malice when the publisher either knows the statement is false or has some serious subjective doubt about the truth of the statement." Id.
GEMSA does not allege either special damages. In fact, its complaint says nothing about the harm it allegedly suffered. Neither does it allege actual malice. Instead, it alleges only negligence by EFF in its Australian complaint. See, e.g., ECF No. 1-14 at 7-8 (alleging that EFF "did not have reasonable grounds" for making the challenged statements).
Statements 1 and 3-4 are statements of opinion, including opinions which constitute rhetorical hyperbole and imaginative expression. Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) ; ECF No. 1-14 at 6-7. The broad context of the article is clearly opinion, as it is a part of EFF's humorous and pointed "Stupid Patent of the Month" series, and the article includes aggressive language including language referring to GEMSA's legal activities as "abusive troll litigation." Compl. ¶ 10, 16-18; see Underwager v. Channel 9 Australia, 69 F.3d 361, 366-67 (9th Cir. 1995) (first examining context to determine whether statement was hyperbole). As for statement 1, EFF's reference to GEMSA's patent as "stupid" is clearly hyperbole. Ferlauto v. Hamsher, 74 Cal.App.4th 1394, 1403, 88 Cal.Rptr.2d 843 (2d Dist. 1999) (characterizations of lawsuit and motion as "stupid," "laughed at," "a joke," "spurious," and "frivolous," were nonactionable hyperbole). Statement 3, that GEMSA "is suing just about anyone who runs a website" is expressive exaggeration. Cochran v. NYP Holdings, Inc., 210 F.3d 1036, 1038 (9th Cir. 2000) (concluding the same when a newspaper wrote that Johnnie Cochran would "say or do just about anything to win"). Finally, as for statement 4, that GEMSA "seems to be a classic patent troll," this is cautiously phrased as an expression of opinion, including by use of the phrase "seems to be." Gregory v. McDonnell Douglas Corp., 17 Cal.3d 596, 603, 131 Cal.Rptr. 641, 552 P.2d 425 (1976) (explaining that a statement's use of the phrase "apparent" demonstrates non-actionable opinion).
In short, not one of the alleged defamatory statements would be defamatory under California law. EFF would not have been found liable for defamation under U.S. and California law. EFF demonstrated that GEMSA violated subsection 28 U.S.C. § 4102(a)(1)(B) of the SPEECH Act.
(3) Whether the Australian court had jurisdiction over EFF
As a separate reason for relief under the SPEECH Act, EFF argues that the Supreme Court of South Australia did not have jurisdiction over it. 28 U.S.C. § 4102(b)(1). EFF was never properly served, thus the Australian court did not have jurisdiction over EFF. Service in the Australian litigation was governed by the Hague Convention, to which both the United States and Australia are signatories. DFSB Kollective Co. v. Bourne, 2012 WL 2376209, at *3 (N.D. Cal. June 22, 2012). The Hague Convention provides for service via a "central authority" in the receiving nation, which in the United States is the Department of Justice. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 704-705, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). According to EFF, while GEMSA served the final entered injunction via the DOJ, it did not serve the case initiating documents, a necessary step for proper service and jurisdiction. Compl. ¶¶ 23, 34. The Court concludes that the Australian court lacked jurisdiction over EFF, and that this constitutes a separate and independent reason that EFF would prevail under the SPEECH Act.
*947 b. Likelihood of prevailing under the Declaratory Judgment Act
EFF also seeks relief under the Declaratory Judgment Act. 28 U.S.C. § 2201(a). The Court concludes that EFF is likely to prevail under the SPEECH Act, and that this Act would provide the full relief that EFF requests, so the Court need not assess EFF's likelihood of prevailing on its Declaratory Judgment Act claim. Compl. at 19; ECF No. 14 at 19 (explaining that EFF is entitled to the same relief under the Declaratory Judgment Act); see also 28 U.S.C. § 4104(a)(1) (explaining that the Declaratory Judgment Act is merely the mechanism by which a person subject to a judgment which violates the SPEECH Act initiates their SPEECH Act suit).
In sum, the second and third Eitel factors favor granting default judgment as EFF has shown a likelihood of prevailing.
3. Sum of money at stake
The next Eitel factor examines the amount of money at stake in relation to the seriousness of a defendant's conduct. Eitel, 782 F.2d at 1471. Here EFF seeks no money, and asks this Court only to declare its constitutional rights. Compl. at 19. Accordingly, the fourth Eitel factor favors the entry of default judgment.
4. Possibility of dispute concerning material facts
The fifth Eitel factor examines the likelihood of a dispute between the parties regarding the material facts surrounding the case. Eitel, 782 F.2d at 1471-72. In assessing this factor, courts examine whether, if defendants appeared, they would be able to dispute material facts. Here, the default judgment is largely a question of law, and setting aside the declarations filed by EFF augmenting the record, any facts at issue are based entirely on publicly filed legal documents. Craigslist, 694 F.Supp.2d at 1061. It is unlikely GEMSA would dispute the facts contained in the declarations submitted by EFF, which objectively describe GEMSA's litigation activities in California and the nature of EFF's presence here. ECF No. 29. Accordingly, the fifth Eitel factor favors granting default judgment.
5. Possibility of excusable neglect
The sixth Eitel factor is whether Defendant's failure to respond to Plaintiff's allegations was the result of excusable neglect. Eitel, 782 F.2d at 1472. GEMSA was properly served in this litigation. ECF No. 23 at 10-11. Moreover, GEMSA is currently appearing in and actively litigating others cases in this district. See supra; see also Global Equity Mgmt. (SA) Pty. Ltd. v. eBay, Inc., 3:17-cv-02178-WHA (N.D. Cal. 2017); Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc., 3:17-cv-02177-WHA (N.D. Cal. 2017). Although GEMSA initially brought these cases in the district court for the Eastern District of Texas, the cases were transferred here, where venue was proper including because the defendant companies' principal places of business are in California. See, e.g., 3:17-cv-02178-WHA, ECF No. 50. Counsel for GEMSA recently withdrew in at least one of the actions, but has been replaced, and GEMSA appears to be actively litigating both cases including by attending hearings in a courtroom down the hall from this Court. See 3:17-cv-02178-WHA, ECF No. 80, 88, 96. The Ninth Circuit held that a party showed excusable neglect where failure to answer resulted from an understanding that final settlement had been achieved. Eitel, 782 F.2d at 1472. Nothing close to that is present here, where GEMSA has demonstrated that it knows how to sue EFF in Australian court, how to litigate against others in this court, including regarding the patent at issue, has been properly served, and failed to enter any appearance, including to contest service or *948 jurisdiction. This factor also favors granting default judgment.
6. Policy for deciding on the merits
The final Eitel factor is that generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is nonetheless warranted. Craigslist, 694 F.Supp.2d at 1061 (citation omitted).
7. Summary of Eitel factors and remedies
Each factor weighs in favor of granting default judgment. The only relief that EFF seeks is a declaration (1) that the Australian Injunction is repugnant to the United States Constitution and the laws of California and the United States; and (2) that the Australian injunction cannot be recognized or enforced in the United States. ECF No. 14-2 at 10. The Court finds that EFF is entitled to this declaratory relief and accordingly grants default judgment.
CONCLUSION
For the foregoing reasons, the Court declines to adopt the Report and Recommendation. The Court concludes that it has jurisdiction and the Court grants EFF's motion for default judgment.
IT IS SO ORDERED.

The "effects test" is sometimes referred to as the "purposeful direction" test. The two terms may be used interchangeably. See, e.g. Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068-70 (9th Cir. 2017) ; Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1142 (9th Cir. 2017) ; Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015) ; Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

No party argues that the Court has general personal jurisdiction over GEMSA.

According to EFF, "when an article has been 'deindexed,' any search that otherwise would have included the webpage in the list of results will no longer produce a list containing that webpage. Search engines generally permit users to submit 'removal requests' requesting the deindexing of particular webpages." ECF No. 14 at 13 n.2.

In August 2016, GEMSA emailed EFF requesting a public apology for and retraction of the article, as well as demanding an "unconditional agreement to payment of all the damages [the] article may cause as compensation." Compl. ¶¶ 8, 20-21. In January 2017, GEMSA contacted EFF via paper mail with a copy of the Australian injunction and a letter stating that EFF must remove the article and any reference links as well as pay approximately $750,000 in alleged damages. Id. ¶¶ 8, 35.

EFF also points to GEMSA's active engagement in patent litigation against various technology companies in this district, including physically entering California for several days on several occasions, as a basis for jurisdiction. ECF No. 27 at 15-16. Because those cases are unrelated to the present one and EFF's claim does not "arise[ ] out of or result[ ] from [those] forum-related activities," Pebble Beach, 453 F.3d at 1155, however, the Court does not consider them in applying the effects test. Separately, the fact that GEMSA regularly appears in this district is relevant to the question of whether the exercise of jurisdiction is reasonable, a question the Court addresses below.

Personal jurisdiction is typically raised by defendants, and First Amendment claims are typically asserted as defenses. See, e.g., Calder, 465 U.S. 783, 104 S.Ct. 1482 ; New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (newspaper's First Amendment defense was proper because "debate on public issues should be uninhibited, robust, and wide-open"); see also Milkovich v. Lorain Journal Co., 497 U.S. 1, 13, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (the privilege of "fair comment" is an affirmative defense to an action for defamation meant). Accordingly, the Court has not located, nor has EFF pointed to, any cases where a plaintiff argues for personal jurisdiction in an affirmative First Amendment case. However, analogies can be drawn from finding personal jurisdiction in copyright infringement cases alleging harm to a company's reputation and profits. See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010) (holding that "it was foreseeable that Brayton Purcell would be harmed by infringement of its copyright, including harm to its business reputation and goodwill" and that "some of this harm would occur in the Forum, where Brayton Purcell was known to reside"); CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011). An analogy can also be drawn to cybersquatting where courts "routinely" find specific personal jurisdiction where the defendant targeted a trademark owner and its readers in the forum. Bittorrent, Inc. v. Bittorrent Mktg. GMBH, No. 12-CV-02525-BLF, 2014 WL 5773197, at *5-6 (N.D. Cal. Nov. 5, 2014) (citing 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil § 1073.1 (Personal Jurisdiction and the Internet) (3d ed. 2002) ).

The Court does not hold that a court in any state with EFF readers would have personal jurisdiction over GEMSA. Rather, the Court holds that the harm felt upon the significant proportion of EFF readers who are in California is a jurisdictionally relevant fact.

See Judgments, Courts Admin. Auth. of S. Australia, http://www.courts.sa.gov.au/Judgments/Pages/default.aspx (last visited Nov. 8, 2017).

The California Supreme Court has recognized a narrow exception to this doctrine, holding that a court may enjoin repetition or republication of statements "determined at trial to be defamatory." Balboa Island Vill. Inn, Inc. v. Lemen, 40 Cal.4th 1141, 1150, 57 Cal.Rptr.3d 320, 156 P.3d 339 (2007). Where "there has been no trial and no determination on the merits" that there is actionable defamation, however, "the court cannot prohibit [a party] from making statements characterized only as 'false and defamatory.' " Evans v. Evans, 162 Cal.App.4th 1157, 1169, 76 Cal.Rptr.3d 859 (2008).

As EFF points out, GEMSA failed to accurately reproduce some of the alleged defamatory statements from EFF's article. ECF No. 14 at 11-12. For example, the article actually stated that GEMSA "is suing just about anyone who runs a website," while GEMSA alleged that EFF stated "GEMSA is suing anyone who runs a website."Id. at 12 (emphasis added).