Filed 11/9/21 (unmodified opn. attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JANE DOE,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>SCOTT DAMRON,<br><br>　　　Defendant and Respondent. | A161078<br><br>(Napa County Super. Ct. No. 19CV001762)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

Pursuant to California Rules of Court, rule 8.264(c)(1), the opinion filed on October 20, 2021, shall be MODIFIED as follows:

1.　　　On page 8, in Discussion B.3., a new paragraph is inserted immediately following the first paragraph in that section as follows:

> This inquiry calls for a weighing of interests. (*Burger King, supra,* 471 U.S. at pp. 476-477.) Relevant interests include, among others, the forum state's interest in adjudicating the case, the plaintiff's interest in obtaining convenient and effective relief, and the burden on the defendant of appearing in the forum. (*Id.* at p. 477.)

2.　　　On page 8, the very next paragraph (now the third paragraph in Discussion B.3.; previously the second paragraph in that section) is modified as follows:

1

i. The word "First" is deleted so that the paragraph now begins with the word "Damron."

ii. The first parenthetical citation in the paragraph, (See *Keeton v. Hustler Magazine* (1984) 465 U.S. 770, 776-777 (*Keeton*) [state interests are relevant to the reasonableness of jurisdiction].), is deleted.

iii. The second parenthetical citation at the end of the paragraph is modified from (*Id.* at p. 776; see also Rest.2d, Conf. of Laws, § 36, comment (c).) to (*Keeton v. Hustler Magazine* (1984) 465 U.S. 770, 776 (*Keeton*); see also Rest.2d, Conf. of Laws, § 36, comment (c).).

3. On page 9, paragraph 1 is modified as follows:

i. The word "Second" is deleted so that the paragraph now begins with the word "Contrary."

ii. A new sentence is added to the end of the paragraph as follows:

California's interests weigh in favor of jurisdiction.

4. On page 10, the second-to-last paragraph of Discussion B.3. is modified as follows:

i. The following sentence is added immediately prior to the sentence "Damron has not made a compelling case that a California forum is unreasonable":

The interests here are a mixed bag, but none weighs strongly against jurisdiction.

ii. Finally, at the very end of the paragraph, a parenthetical citation is added: (*Burger King, supra,* 471 U.S. at p. 478.)

The modification effects no change in the judgment.


Date: _____11/09/2021_____          Jackson, P.J.

_____, P.J.


A161078

3

Napa County Superior Court Case No. 19CV001762. The Honorable Victoria Wood.

ADZ Law, LLP and Tulin D. Acikalin, Laura Alvarez, Jessica Dayton, and Paula Vielman-Reeves for Plaintiff and Appellant.

Hinshaw & Culbertson LLP and Amanda Almeda and Sandra Mary Benyamin; Family Violence Appellate Project and Arati Vasan, Cory Hernandez, and Jennafer Dorfman Wagner for Family Violence Appellate Project, Alliance for Hope International, Battered Women's Justice Project, California Women's Law Center, California Protective Parents Association, Center for a Non-Violence Community, Community Legal Aid SoCal, Domestic Abuse Center, Doves of Big Bear Valley, Inc., FreeFrom, Law Foundation of Silicon Valley, Legal Voice, Los Angeles County Bar Association Counsel for Justice Domestic Violence Project, Project Sanctuary, Public Interest Law Project, Sanctuary for Families, San Diego Volunteer Lawyer Program, Inc., Christine M. Scartz, Stopping Domestic Violence, Walnut Avenue Family & Women's Center, and D. Kelly Weisberg, as Amici Curiae on behalf of Plaintiff and Appellant.

Andrew D. Bradt, Professor of Law, University of California, Berkeley School of Law, as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of George P. Eshoo and George P. Eshoo for Defendant and Respondent.

4

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SCOTT DAMRON,<br><br>        Defendant and Respondent. | A161078<br><br>(Napa County<br>Super. Ct. No. 19CV001762) |

While travelling in California, a man assaulted and injured his spouse.  Both live in Georgia.  The spouse brought a tort action in California superior court.  The court concluded that it lacked personal jurisdiction over the assailant and dismissed the action.  We reverse and hold that, absent compelling circumstances that would make the suit unreasonable, a court may exercise jurisdiction over a non-resident who commits a tort while present in the state.

**BACKGROUND**

**A.**

While plaintiff Jane Doe and defendant Scott Damron were married, the couple travelled together to California on two occasions.  In Riverside, according to Doe, Damron forcibly groped her on a sidewalk, attempted to force her to perform oral sex on him in the street, and then raped, battered, and strangled her in

1

their hotel room. Doe alleges she sought help from hotel staff, who called the police, and she received medical assistance. The police arrested Damron and he eventually pled guilty to willfully inflicting corporal injury on his spouse (Pen. Code, § 273.5, subd. (a)).

The couple travelled to California a second time to attend a conference in Anaheim and to vacation in northern California. Doe alleges that, during this trip, Damron grabbed her, shoved her to the floor, strangled her, and bruised her neck.

According to Doe, Damron also assaulted her numerous times in Georgia. However, apart from the Riverside incident, Damron denies ever assaulting Doe.

## B.

During marital dissolution proceedings in Georgia, Doe alleged that Damron abused her, and she filed claims against him for battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. Doe later dismissed these claims without prejudice. The Georgia court granted the couple a divorce, finding that the marriage was irretrievably broken.

## C.

In the instant case, Doe asserts causes of action against Damron for domestic violence (Civ. Code, § 1708.6), sexual battery (*id.,* § 1708.5), and gender violence (*id.*, § 52.4). Although Doe's complaint alleges abuse in Georgia as well as California, Doe stated in the trial court that her causes of action are based solely on acts of violence that took place in California, and she offered to amend her complaint to eliminate the allegations of abuse in Georgia. We treat those allegations as abandoned. (See *Olabi v. Neutron Holdings, Inc.* (2020) 50 Cal.App.5th 1017, 1020 [a party may abandon claims in open court].)

2

Damron filed a motion to quash service of process, contending that exercising personal jurisdiction over him was unfair because he lacked a sufficient connection with California and because it would be too burdensome. He had never lived, owned property, paid taxes, registered to vote, opened a bank account, or held a driver's license in California. His only contacts arose from his two trips to California with Doe. He identified witnesses and documents located in Georgia. The trial court agreed with Damron, granted his motion, and dismissed the action for lack of personal jurisdiction.

## DISCUSSION

### A.

As an initial matter, we reject Doe's argument that Damron is precluded from re-litigating the question of personal jurisdiction because the issue was already decided in his criminal case. (See, e.g., *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824-825 [collateral estoppel precludes re-litigation of the identical issue by a party bound by the prior judgment].) The record does not establish the same basis for jurisdiction in the two cases. Damron was present in California when he was served with the criminal complaint. (See *Burnham v. Superior Court of California, County of Marin* (1990) 495 U.S. 604, 610-614, 619 (lead opn. of Scalia, J.) [presence in the forum when served generally suffices for jurisdiction].) In the civil case, however, Damron was not personally served in California with Doe's complaint. Accordingly, Doe cannot invoke collateral estoppel.

### B.

Doe maintains that the trial court may exercise personal jurisdiction over Damron. We agree.

**1.**

California grants its courts the power to assert personal jurisdiction over out-of-state parties to the maximum extent that the state and federal constitutions allow. (Code Civ. Proc., § 410.10.) The constitutional limit is found in the due process clause, which requires a defendant to have sufficient "minimum contacts" with the forum state to satisfy " 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 (*International Shoe*).)

The minimum contacts doctrine serves two goals. First, it protects interstate federalism: a state that has no legitimate interest in a lawsuit should not encroach on states that do. (*Ford Motor Co. v. Montana Eighth Judicial District Court* (2021) __ U.S. __, __ [141 S.Ct. 1017, 1025] (*Ford*).) Second, it treats defendants fairly. When individuals or companies conduct activities in (or direct actions toward) a state, they may reasonably expect to be held to account in the state's courts for related misconduct. (*Ibid*.) But it is unfair for a state to exercise jurisdiction over a party whose only contacts with the state were " 'random,' 'fortuitous,' or 'attenuated.' " (*Burger King Corp v. Rudzewicz* (1985) 471 U.S. 462, 486 (*Burger King*).)

The nature and strength of a defendant's contacts with a state determine the type of jurisdiction a court may assert— general or specific. General (also called all-purpose) jurisdiction means that a defendant's contacts with a state are sufficiently extensive that the "defendant is 'essentially at home,' " and the court may exercise jurisdiction over the defendant regardless of whether the claims relate to the forum state. (*Ford, supra*, __ U.S. at p. __ [141 S.Ct. at p. 1024].) Specific (case-linked) jurisdiction means the defendant is less closely connected to the forum state, and the court may only exercise jurisdiction if the claims arise from or relate to the defendant's contacts with the

4

state.  (*Id.,* at pp. __ [141 S.Ct. at pp. 1024-1025].)  Here, we are only concerned with specific jurisdiction.

The plaintiff has the initial burden of demonstrating, by a preponderance of evidence, that the defendant's actions have created the requisite minimum contacts.  (*Zehia v. Superior Court* (2020) 45 Cal.App.5th 543, 552 (*Zehia*).)  If the plaintiff succeeds, the burden shifts to the defendant to demonstrate jurisdiction would nonetheless be unreasonable.  (*Ibid.*)

Our review is de novo, based on undisputed facts and the trial court's factual findings.  (*Zehia, supra*, 45 Cal.App.5th at p. 552.)  The trial court assumed that Doe established minimum contacts and thus made no findings on that point.  Several facts are undisputed.  Damron and Doe travelled together on at least two trips to California.  Although Damron denies that he assaulted Doe on other occasions, he admitted that he assaulted and injured her in California when he pled guilty to willfully inflicting corporal injury on her on the Riverside trip (Pen. Code, § 273.5, subd. (a)).  The causes of action that allegedly grew out of this intentional tort include domestic violence (Civ. Code, § 1708.6), sexual battery (*id.*, § 1708.5), and gender violence (*id.*, § 52.4).  (See *Lundgren v. Superior Court* (1980) 111 Cal.App.3d 477, 485 [the nature of a cause of action in an unverified complaint is relevant to the jurisdictional analysis].)  The trial court's ultimate conclusion—that exercising personal jurisdiction over Damron would be unreasonable—is a legal question that we review independently.  (*Zehia, supra,* at p. 552.)

**2.**

We now examine Damron's actions to determine whether they constitute minimum contacts sufficient for personal jurisdiction.

To support specific jurisdiction, we look for a relationship between the defendant, the forum state, and the litigation.

(*Ford*, *supra*, __ U.S. at p. __ [141 S.Ct. at p. 1025].)  Specifically, (1) the defendant's own actions must connect him or her to the forum state (*Walden v. Fiore* (2014) 571 U.S. 277, 284-286 (*Walden*)), and (2) the litigation must arise from or relate to the defendant's actions.[1]  (*Ford, supra*, at p. __ [141 S.Ct. at p. 1026].)

These requirements are met when a tort claim is based on the actions of a defendant who traveled to a state and, while there, injured the plaintiff.  (See *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 111, 114; *Kaiser Aetna v. Deal* (1978) 86 Cal.App.3d 896, 901 (*Kaiser Aetna*).)  The defendant's actions—traveling to the state, tortiously injuring the plaintiff— took place in the forum state, and the lawsuit arose from those actions.  (Compare *Walden*, *supra*, 571 U.S. at pp. 288-289 [no meaningful connection to Nevada where defendant did not travel to Nevada or commit tortious acts there].)

---

[1] Courts have used different (often opaque) language to describe the requisite connection between a defendant's actions and a forum state in various situations.  (See *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062-1063, abrogated on another ground in *Bristol-Myers Squibb Co. v. Superior Court of California* (2017) __ U.S. __ [137 S.Ct. 1773, 1781].)  In cases that sound in contract, the Ninth Circuit asks whether the defendant "purposefully avail[ed] himself of the privilege of conducting activities in the forum," but, in cases that sound in tort, it asks whether the defendant "purposefully direct[ed] his activities" toward the forum.  (*Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797, 802.)  Asking whether the defendant directed activities *toward* the forum state, however, makes more sense when the defendant was not physically present in the state at the time.  (See *Burger King, supra*, 471 U.S. at p. 476.)  As we explain below, the inquiry here is straightforward: When a defendant commits a tort in the forum state, the defendant has established a sufficient connection with the state to satisfy due process.

Indeed, it is well settled that jurisdiction is proper even when the alleged tort occurred during a single, brief visit. The classic example is a visitor who negligently causes a car accident. (*Hess v. Pawloski* (1927) 274 U.S. 352, 356; see *International Shoe, supra*, 326 U.S. at p. 318 [citing *Hess* with approval].) " 'There is little doubt that a [defendant] is amenable to state jurisdiction in a tort action even though it has carried on only isolated or sporadic activity within the forum state, so long as the alleged tort grew out of that activity.' " (*Elkhart Engineering Corp. v. Dornier Werke* (5th Cir. 1965) 343 F.2d 861, 865-868 [negligent plane crash in the forum state]; see also *James R. Twiss, Ltd. v. Superior Court of Los Angeles County* (1963) 215 Cal.App.2d 247, 250-252, 254 [tort suit against non-resident company for personal injuries caused while the company's ship was docked in the forum state].)

Our Supreme Court has held that a court may properly exercise jurisdiction over a non-resident who was sued in tort for a dog bite. (*Owens v. Superior Court of Los Angeles County* (1959) 52 Cal.2d 822, 830-832.) The suit arose from the defendant's ownership and possession of the offending dog while in the state—nothing more was required to satisfy due process. (*Id.* at p. 830.) The *Owens* court explained: "it is reasonable and fair to require a defendant whose voluntary acts have given rise to a cause of action in a state to litigate his responsibility for that conduct at the place where it occurred." (*Id.* at p. 831; see also *Kaiser Aetna, supra*, 86 Cal.App.3d at p. 901; Rest.2d, Conf. of Laws, § 36, subd. (1) ["A state has power to exercise judicial jurisdiction over an individual who has done . . . an act in the state with respect to any claim in tort arising from the act."].)

Given *Owens* and *Hess*, Damron's actions easily satisfy the minimum contacts requirement. If a negligent car accident or dog bite suffices, surely an assault does, too. In no way could Damron's intentional tort in California be described as a "

'random,' 'fortuitous,' or 'attenuated' " basis for jurisdiction that falls short of the minimum contacts. (*Burger King*, *supra*, 471 U.S. at p. 486.) Visitors to a state should reasonably expect that, if they assault someone on their travels, they may have to answer for their conduct in the state's courts. Indeed, Damron was criminally prosecuted in California for the same conduct.

### 3.

Lastly, we consider whether, notwithstanding sufficient contacts with the state, Damron has presented "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (*Burger King*, *supra*, 471 U.S. at p. 477; but see Rest.2d, Conf. of Laws, § 36, subd. (1) [jurisdiction is reasonable for an in-state tort as a matter of law].)

First, Damron posits that "California has no interest in adjudicating alleged domestic violence allegations where the entire domestic relationship was in Georgia." (Italics omitted.) (See *Keeton v. Hustler Magazine* (1984) 465 U.S. 770, 776-777 (*Keeton*) [state interests are relevant to the reasonableness of jurisdiction].) Damron misses the point. The issue is not California's interest in regulating a domestic relationship in Georgia. The issue is California's interest in regulating tortious conduct in California. That interest is beyond dispute. " ' " [T]orts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection." ' " (*Id*. at p. 776; see also Rest.2d, Conf. of Laws, § 36, comment (c).)

Second, contrary to Damron's suggestion, the state's interest extends to non-resident victims. (See *Freestream Aircraft (Bermuda) Limited v. Aero Law Group* (9th Cir. 2018) 905 F.3d 597, 608 [a state "does have an interest in torts allegedly committed [against non-residents] within its borders (namely, preventing them)."].) California law protects people from domestic violence, holds abusers to account, and provides a remedy for victims of spousal abuse that occurs in the state—

8

without regard for whether the abusers or victims reside here. (See, e.g., Civ. Code, § 1708.6 [providing for liability for the tort of domestic violence]; Pen. Code, § 273.5; *Hogue v. Hogue* (2017) 16 Cal.App.5th 833, 839.) If a defendant has minimum contacts with a forum state, there is no additional requirement that the plaintiff be a resident of that state. (*Keeton*, *supra*, 465 U.S. at p. 780; *Epic Communications, Inc. v. Richwave Technology, Inc.* (2009) 179 Cal.App.4th 314, 336.) Constitutional limits on jurisdiction do not grant a free pass to tourists and business travelers—millions of whom visit California each year—to abuse their spouses or assault other visitors without fear of civil liability in the state.

Finally, Damron argues that it would be unfair to adjudicate the case in California because it would be inconvenient and burdensome. Despite sufficient contacts with a forum state, a defendant may prevail by demonstrating that litigating the case in a foreign state would be " 'so gravely difficult and inconvenient' " that it would put him at a " 'severe disadvantage' in comparison to his opponent." (*Burger King*, *supra*, 471 U.S. at p. 478.) Damron submitted a declaration asserting, with scant details, that California is a "seriously inconvenient forum" and that "it will be an extreme financial burden" for him to have to defend suit here. The trial court noted that Damron has identified at least 20 individuals in Georgia that "are or may be" witnesses in the case. Damron says his witnesses in Georgia could testify to Doe's "erratic behavior and her jealous rages." His Georgia attorney declared, again with no specifics, that "all documents[] [and] any alleged medical records or therapist records are all in Georgia," and it would be expensive to "procure certified copies, subpoena documents, etc."

We are not persuaded. To be sure, both parties would suffer inconvenience, expense, and burdens. Both live in Georgia. Both have retained counsel in California. While Damron has

9

identified witnesses and documents in Georgia, Doe has identified at least nine witnesses in California who allegedly have relevant information about the assault in Riverside, including hotel employees who called the police for her, a medical responder, a treating physician who examined her for sexual assault, and a police detective, investigator, and two officers. (See *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 592 [personal jurisdiction over non-resident was reasonable even though "proof of the claims alleged may require witnesses from both California and Germany"]; Rest.2d, Conf. of Laws, § 36, comment (c) [a state's jurisdiction over a tort action is reasonable, in part, because there will usually be witnesses in that state].) Damron has not made a compelling case that a California forum is unreasonable.

We have considered Damron's remaining arguments and find them to be without merit.

## DISPOSITION

The judgment is reversed. On remand, the trial court shall deny Damron's motion to quash for lack of personal jurisdiction.

10

_____

BURNS, J.

We concur:

_____

JACKSON, P.J.

_____

SIMONS, J.

A161078

11

Napa County Superior Court Case No. 19CV001762. The Honorable Victoria Wood.

ADZ Law, LLP and Tulin D. Acikalin, Laura Alvarez, Jessica Dayton, and Paula Vielman-Reeves for Plaintiff and Appellant.

Hinshaw & Culbertson LLP and Amanda Almeda and Sandra Mary Benyamin; Family Violence Appellate Project and Arati Vasan, Cory Hernandez, and Jennafer Dorfman Wagner for Family Violence Appellate Project, Alliance for Hope International, Battered Women's Justice Project, California Women's Law Center, California Protective Parents Association, Center for a Non-Violence Community, Community Legal Aid SoCal, Domestic Abuse Center, Doves of Big Bear Valley, Inc., FreeFrom, Law Foundation of Silicon Valley, Legal Voice, Los Angeles County Bar Association Counsel for Justice Domestic Violence Project, Project Sanctuary, Public Interest Law Project, Sanctuary for Families, San Diego Volunteer Lawyer Program, Inc., Christine M. Scartz, Stopping Domestic Violence, Walnut Avenue Family & Women's Center, and D. Kelly Weisberg, as Amici Curiae on behalf of Plaintiff and Appellant.

Andrew D. Bradt, Professor of Law, University of California, Berkeley School of Law, as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of George P. Eshoo and George P. Eshoo for Defendant and Respondent.